WILLIAM WOOD PRINCE *et al., Trustees vs.* J. JOSEPH NUGENT, *Attorney General, et al.*

JUNE 29, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Roberts, J. This is a bill in equity for instruction concerning certain provisions contained in a deed of trust that provide for the disposition of a portion of the net income arising from the trust estate. Frederick H. Prince, hereinafter referred to as the settlor, created the trust by his execution of a deed of trust in Providence on June 3, 1932. The complainants are the present trustees, while included as respondents are all of those now living who were designated beneficaries in the deed of trust, the wives and chil-

dren of certain of the designated beneficiaries therein, and the attorney general of this state. Guardians ad litem were appointed to represent the interests of infant respondents as well as the interests of persons not in being, not ascertainable or in the military service, and in each instance an appropriate answer has been filed. When the cause was ready for hearing for final decree, it was certified to this court under G. L. 1956, §9-24-28, for our determination of the questions stated therein.

The deed of trust provided that the trust therein created was to continue for twenty-one years after the death of the last survivor of ten designated persons including the settlor, all of whom were then living. The original trustees were the settlor and his wife Abbie Norman Prince. In section 4 of article III of the deed of trust it is provided specifically that the settlor or his wife, if living at the time a trusteeship becomes vacant, shall have the power to appoint some person to fill that vacancy. In 1935 the settlor resigned as a trustee, and to that vacancy he appointed Edith Norman Hunter, who resigned therefrom in 1943. The settlor then appointed William Wood Prince, one of the complainants here, to fill that vacancy. The settlor's wife died in February 1949, and the settlor thereupon appointed James F. Donovan, also one of the complainants here, to fill the trusteeship thus left vacant by the death of his wife. The settlor lived until 1953.

In sec. 1 of art. II of the deed of trust the trustees are given directions to make disbursements from the "net income arising from the trust estate" among a group of specifically designated beneficiaries. It is not disputed that the settlor included therein all of the then living members of the Prince and Wood families. In several of these provisions there are limitations over on the death of the beneficiary to the children and the descendants of the deceased children of the beneficiary named therein. Among the beneficiaries so included in sec. 1 of art. II are Frederick Henry

Prince, 3d, the grandson of the settlor, and William Wood Prince, a son of Bernard Henry-Wood, Jr., a cousin of the settlor.

Frederick Henry Prince, 3d, hereinafter referred to as Prince, 3d, is designated as a beneficiary entitled to participate in the distribution of a portion of the net income of the estate under paragraph (c) of sec. 1 of art. II of the deed of trust. Provision is made therein for payments to Prince, 3d, during his lifetime, and upon his death the trustees are directed to pay the amount of $25,000 "per year per stirpes to his children and the descendants of his deceased children living from time to time as such payments of net income become due * * *." Prince, 3d, is presently the father of two children, who are thus great-grandchildren of the settlor. These are his son Frederick Henry Prince, 4th, who was born in 1947, and daughter Elizabeth J. M. Prince, who was born in 1946 and who will hereinafter be referred to as Elizabeth. It is not disputed that Elizabeth, as a female child of Prince, 3d, is entitled to participate in the distribution of the net income of the estate pursuant to the provisions of par. (j), subdivision I, of said sec. 1 of art. II.

In the deed of trust par. (j) of sec. 1 of art. II provides for the distribution of a portion of the net income of the trust estate that reflects the net annual operational profits of F. H. Prince & Co. Inc. to the children and more remote issue of Prince, 3d, and of William Henry-Wood, now William Wood Prince. Provision for the female children and the more remote female issue of these designated beneficiaries is made in said par. (j), subdiv. I, which in pertinent part reads as follows: "The trustees shall divide one-third thereof (up to but not exceeding Seventy-five Thousand Dollars ($75,000.) in any one year) into three equal shares, and shall pay over one each of said shares, per stirpes, to and among the female children and more remote female issue living at the time of such payment, of each of

Frederick Henry Prince, 3d, Bernard Henry-Wood, 3d, and William Henry-Wood; PROVIDED, that any of said shares of net income which shall fail to be disposed of under this sub-division I shall be added to the other or others of said shares and follow the destination thereof." It is clear from the record that there was no one eligible to take any of this income prior to the birth of Elizabeth in 1946.

William Wood Prince, hereinafter referred to as Wood Prince, is a natural son of the settlor's cousin, Bernard Henry-Wood, Jr., and is the William Henry-Wood who was designated in par. (h) of sec. 1 of art. II of the deed of trust as a beneficiary entitled to share in the distribution of the net income. In that paragraph the trustees were empowered to make payments from the net income of the trust estate to Wood Prince during his lifetime, which payments were conditioned upon his compliance with certain provisions therein set out. It is not disputed that there has been compliance with these conditions on the part of Wood Prince. The trustees are further directed in that paragraph that upon the death of Wood Prince they shall thereafter "pay the sum of Ten Thousand Dollars ($10,-000.) per year per stirpes to his children and the descendants of his deceased children living from time to time when such payments of income become due * * *."

In November 1940 Wood Prince married Eleanore de-Ricou, a widow, and subsequently obtained from the wife of the settlor an approval in writing of this marriage. In January 1941 Wood Prince adopted Alain deRicou, his wife's son by her prior marriage. In 1944 Wood Prince himself was adopted by the settlor and his wife and in 1946 legally changed his name from William Henry-Wood to William Wood Prince. In addition to his adopted son, whose name was subsequently in 1957 changed to Alain deRicou Wood Prince, he has two natural sons, William Wood Prince, Jr., and Edward Alexander Wood Prince. Alain, the adopted son of Wood Prince, has married and is

the father of an infant daughter, Barbara Eleanore Wood Prince, born in 1958, who will hereinafter be referred to as Barbara. The instruction sought in the instant bill of complaint relates in part to the right of Barbara to participate with Elizabeth in the distribution of the net income of the trust estate as is provided for in par. (j), subdiv. I.

The settlor clearly intended that the irrevocable inter vivos trust created by him would be of long duration in time and accomplish two objectives. One of these objectives was the perpetuation of the control and management of the corporate complex bearing his name in the Prince and Wood families and the other, the support and maintenance of these families through a distribution to them of the net income of the trust estate. It is with the effectuation of this second objective that we are now concerned. Barbara, by reason of her birth as a natural daughter of Alain, the adopted son of Wood Prince, has confronted the trustees with the necessity for deciding whether Alain comes within the limitation in (h) to the "children" of Wood Prince so as to bring his daughter within the limitation in (j) I to the "more remote female issue" of Wood Prince.

The only necessity for immediate action confronting the trustees arises from the question of Barbara's entitlement to participate with Elizabeth in the distribution of net income as provided for in (j) I. In such circumstances, of the five questions propounded in the bill of complaint we deem it necessary to answer only the following two: "(a) Is Alain Wood Prince a child of William Wood Prince?" and "(e) Is Barbara Eleanore Wood Prince an issue of William Wood Prince?" The conditions that would require the trustees to act with respect to the remaining questions have not as yet occurred, and it is unnecessary, therefore, for us to answer those questions at this time. *Elder* v. *Elder,* 84 R. I. 13.

The primary determination to be made here, in our opin-

ion, is whether Alain, as the adopted son of Wood Prince, is included within those limitations to the "children" of Wood Prince set out in the deed of trust. If Alain is included within the terms of such limitations, it necessarily follows that Barbara, as his natural child, is within the limitation to the "more remote female issue" of Wood Prince set out in (j) I. Only upon a determination that Alain, as the adopted son of Wood Prince, is not included within the limitations to the "children" of Wood Prince would it become necessary for us to consider whether Barbara could take as a "remote female issue" of Wood Prince under (j) I without regard to the status of Alain, as is asserted in her behalf. We turn then, first, to the question whether Alain as an adopted son of Wood Prince is included within a limitation to the "children" of said Wood Prince.

Whether a limitation to the children or issue of an adoptive parent set out in a testamentary document includes an adopted child of such parent depends entirely upon the intention of the testator. *In re Truman*, 27 R. I. 209. In *Smith* v. *Bradford*, 51 R. I. 289, this court said at page 294: "So the word 'children' may or may not include a child by adoption. Whether it does include an adopted child is determined *not by the use of the particular word* but by the intention of the testator as ascertained by a study of his entire will." (italics supplied) This well-established rule for the interpretation of testamentary limitations is also applied by this court to cases wherein similar limitations have been set out in a deed of trust. *Rhode Island Hospital Trust Co.* v. *Sack*, 79 R. I. 493.

The settled rule of substantive law at the time of the execution of the instant deed of trust was that whether an adopted child was included within the bounty of a settlor or excluded therefrom was solely a matter of the settlor's intention with respect thereto, and, absent an express declaration of an intention, it is to be ascertained, if at all,

from an examination of the instrument in its entirety. This rule of law has not been abrogated by the enactment of statutes that confer upon adopted children a capacity to inherit from or through their adoptive parents. The statute in effect in this state at the relevant time, G. L. 1923, chap. 288, sec. 6, provided in part that "A child so adopted shall be deemed, for the purposes of inheritance by such child and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock * * *."

In *Smith* v. *Bradford, supra, Union Trust Co.* v. *Campi,* 51 R. I. 76, and *Rhode Island Hospital Trust Co.* v. *Sack, supra,* this court made it clear that the statute did not abrogate the rule that the intention of the testator, when ascertained, must prevail. The pertinent statute in its present form, G. L. 1956, §15-7-16, enlarges the capacity of an adopted child to take from or through the adoptive parent; but, while enlarging the capacity of an adopted child to inherit from the adoptive parent, it does not have the effect of making an adopted child a natural child of the adoptive parent so as to be ipso facto included within a limitation to the children or issue of such parent. Obviously these statutes do not purport to operate so as to preclude a testator or settlor from excluding an adopted child from the distribution of his property by a will or a deed of trust.

This view of the operative effect to be given to these statutes which confer upon an adopted child the capacity to inherit has had general acceptance by the courts. Such statutes are usually construed as conferring only the capacity to inherit from or through the adoptive parent and to confer no right upon an adopted child to take under a testamentary limitation contrary to the intent of the testator. *In re Fisler,* 131 N.J. Eq. 310; *Woodcock's Appeal,* 103 Me. 214; *Comer* v. *Comer,* 195 Ga. 79; *Brock* v. *Dorman,* 339 Mo. 611.

One of the essential arguments of those respondents who support the inclusion of the adopted child in this case is premised upon the effect of the 1923 statute concerning the status of an adopted child. They contend that under that statute an adopted child by operation of law acquired the status of a natural child of the adoptive parents by reason of that provision thereof which gave an adopted child the capacity to inherit from the adoptive parents as if it had been born to such parents in lawful wedlock. Under such statutory provision, it is argued, the adopted child is made the lawful issue of the adoptive parent, and consequently for the purposes of inheritance such an adopted child acquires a status equivalent to that of a natural child. That the statute gives an adopted child a status equivalent to that of a natural child has been recognized by the New Jersey court in *Palmer* v. *Kingsley*, 27 N. J. 425.

Therefore, they argue, when a testator sets out a limitation to the children or issue of an adoptive parent, that limitation should be deemed inclusive of an adopted child of such parent in the absence of a clear intent on the part of the testator to the contrary. This is substantially a contention that this court, in interpreting a limitation to the child or issue of an adoptive parent, should apply as a rule of construction that the adopted child is deemed to be included within the limitation unless a contrary intent on the part of the testator is clear. This, in our opinion, is what the legislature did when it enacted §15-7-16 wherein it provided that in construing an instrument, whenever executed, an adopted child shall be deemed to be within a limitation to the lawful issue of the adoptive parents unless a contrary intent appears in the terms thereof.

It was the policy of this court, when required by reason of some ambiguity in a testamentary document to ascertain the intent of a testator who used a limitation to the child or issue of an adoptive parent, to invoke the long-established rule of construction that an adopted child is

not to be deemed included within such a limitation unless an intention to include such child therein clearly appears from the terms of the instrument or the surrounding circumstances. The rule is stated in *Union Trust Co.* v. *Campi, supra,* at page 81 as follows: "The word 'children' does not usually include an adopted child, notwithstanding a statutory provision investing an adopted child with the right of inheritance from the adopting parent, unless it is manifest from the language of the will and the surrounding circumstances, as in connection with such a statute, that the testator intended to include such child."

That rule of construction was of judicial origin. In *Rhode Island Hospital Trust Co.* v. *Sack, supra,* this court noted at page 497: "* * * we are of the opinion that the word 'children' was used in its ordinary and usual meaning; that the settlor did not intend to include the adopted daughter of his nephew within the meaning of the word 'children' as used in paragraph 7 of the indenture of trust * * *." This language used in the *Sack* case is significant that the rule of construction above referred to was but an extension of our long-standing rule of construction as to the meaning of words used in testamentary instruments and in deeds of trust. That rule is that such words will be construed as having been used in their ordinary and usual sense in the absence of a clear intention to the contrary appearing in the instrument. We said in *Industrial Trust Co.* v. *Wilson,* 61 R. I. 169, at page 179: "Unless a contrary intention clearly appears in the will, the language used by the testator must be given its ordinary and natural construction. *Rhode Island Hospital Trust Co.* v. *Davis,* 41 R. I. 386. Only if there is something apparent in the context of the will or the attendant circumstances which shows that the words are used in a different sense, are they to be taken out of their literal and ordinary import. *Bailey* v. *Brown,* 19 R. I. 669 * * *."

However, when the legislature amended the prior statute

relating to the status of adopted children by enacting P. L. 1956, chap. 3851, sec. 1, now G. L. 1956, §15-7-16, it prescribed therein a rule of construction to be invoked by the courts to assist in ascertaining the intent of a testator as to the inclusion or exclusion of an adopted child where a limitation contained in the instrument was so ambiguous as to obscure that intent. That statute in pertinent part reads as follows: "In the construction of any instrument whether executed before or after the time of enactment of this chapter a child so adopted and his descendants shall be deemed to be included within a limitation to the lawful issue or descendants, as the case may be, of the parent or parents by adoption, unless a contrary intention shall appear by the terms thereof or unless the particular estate so limited shall have vested in and as to the person or persons entitled thereto on May 8, 1956." May 8, 1956 was the date upon which this amendatory statute became effective.

It is within the power of the legislature to prescribe by statute rules for the construction of testamentary instruments. *Langley* v. *Langley,* 18 R. I. 618. Where the legislature has prescribed such a rule, it is the duty of this court to observe that rule in construing such an instrument. These enactments, however, do not constitute rules of substantive law but merely reflect conclusions of the legislature that are firmly based upon the generally known results of wide human experience. See *Love Estate,* 362 Pa. 105. This court has recognized the authoritative nature of these statutory rules of construction. In *Hayes* v. *Siple,* 65 R. I. 508, the court considered the statute, now G. L. 1956, §34-3-1, wherein it was provided that a deed to two or more grantees is deemed to create a tenancy in common unless a contrary intention manifestly appears. The court held that in enacting that statute the legislature had prescribed a rule of construction that was binding upon the court. In *Heath, Petitioner,* 12 R. I. 479, the same statute was being considered by this court. In that case

we held that the provisions of the statute which applied the same rule of construction to a devise of property under a will prescribed a rule of construction that the court, in construing a will, was required to observe.

However, such rules of construction, despite their statutory origin, will not operate so as to override the intention of a settlor and will not be invoked where that intention is not obscured by the use of ambiguous language in the instrument. These rules of construction, whether they originate with the judiciary or with the legislature, are to be applied only to ascertain and effectuate the intent of the testator and not to defeat that intent. *In Re Norris,* 46 R. I. 57, 61.

The basic principle with relation to matters testamentary as well as the creation of inter vivos trusts is that the intention of the testator or settlor as it is expressed in the will or in the deed be ascertained, and if it does not contravene some rule of substantive law it is to be given effect so far as it is possible. However, where this intent is not clear but is obscured by reason of ambiguous language in the deed, courts will invoke rules of construction to assist in the ascertainment of the settlor's intent. They are not, however, rules of substantive law and are not to be confused with such. *Rhode Island Hospital Trust Co.* v. *Beckford,* 67 R. I. 492. This court said in *Hadley Falls Trust Co.* v. *Green,* 74 R. I. 153, at page 158, that where the intention of the testator is ascertained, "it is all-controlling and overrides all other mere rules of construction."

After an exhaustive study of the provisions of the deed of trust we are constrained to conclude that it does not make clear the intention of the settlor either to include adopted children within the relevant limitations contained therein or to exclude such children therefrom. In order to ascertain his intention in this respect, this court may invoke the assistance of such rules of construction as are appropriate. In view of the provisions of §15-7-16, however,

in construing the limitations here under consideration we cannot apply that rule of construction to which we have long adhered and have applied in the cases of *Campi* and *Sack, supra.* It is incumbent upon us in the present state of the law, unless we are precluded from such action either by the terms of the statute or the clear intent of the settlor, to interpret this deed by applying thereto the rule of construction that has been prescribed by the legislature in §15-7-16.

The respondents who oppose the inclusion of an adopted child within the instant limitations contend, for various reasons, that the rule of construction prescribed in §15-7-16 is not applicable to the limitations here being considered. One of these contentions is premised on their argument that the entitlement of Elizabeth to a portion of the net income of the trust estate to be distributed under the provisions of par. (j), subdiv. I, of the deed vested in interest in Elizabeth on May 8, 1956. The statute by its terms provides that the rule of construction shall not be invoked where "the particular estate so limited shall have vested in and as to the person or persons entitled thereto on May 8, 1956." The particular estate here is the interest of Elizabeth under par. (j), subdiv. I. The legislature clearly intended that this rule of construction should not be invoked with respect to estates that had vested in the persons thereto entitled prior to the enactment of the legislation.

We do not agree with the contention that the word "vested" as used in the statute was intended by the legislature to include estates or interest that, while presently contingent, could potentially vest either in possession or interest upon the occurrence of a prescribed future event. It is our opinion that the legislature intended that the word "vested" be given the technical meaning it has in the law of property and therefore be consistent with the purpose of the statute, that is, to promote the public interest in perpetuation of the family unit through the integration

therein of adopted children with the status of natural children. Considering the word "vested" in that light, it would appear that the only estates to be excluded from the scope of the prescribed rule of construction by reason of vesting would be those in which some ascertained person had at the time of the enactment of the statute either an immediate right of present enjoyment or a present fixed right of future enjoyment.

The precise question raised is whether Elizabeth's interest in that portion of the net income to be distributed under par. (j), subdiv. I, vested in her at the time of her birth in 1946 or whether its vesting was contingent upon the happening of another event in the future, namely, that she be alive at the time prescribed for the annual payment of such income. Whether a gift vests immediately upon the execution of an irrevocable inter vivos trust depends upon the intention of the settlor with respect thereto. *Rhode Island Hospital Trust Co.* v. *Beckford, supra; Industrial Trust Co.* v. *Hall,* 66 R. I. 201. What that intention was is to be determined from a scrutiny of the whole instrument unless some particular clause or provision therein makes that intention clear.

It is our opinion that the clear intention of the settlor providing for a distribution of the net income under (j) I was to make the payment of these annual portions of that income dependent upon those who would take under the limitation being alive at the time of such payment, that is, at the close of each fiscal year of the corporation. In par. (j) the settlor directed that a portion of the net income of the trust estate equal to the annual profits from the operations of the corporation should "as soon after the end of each fiscal year of the corporation as may be" be paid over "to and among the female children and more remote female issue *living at the time of such payment* * * *." (italics ours) We do not perceive that the effect of that language was to confer upon the female issue referred to

therein a fixed right to the future enjoyment of these annual payments so as to vest them in interest in such female issue. It is our opinion that to so interpret the limitation would be to hold as meaningless the employment by the settlor of the qualifying phrase "living at the time of such payment."

But if it were necessary here by reason of an ambiguity to resort to rules of construction to assist in ascertaining the settlor's intent in this respect, it is our opinion that the language employed attaches futurity to the substance of the gift from which it is to be inferred that the settlor intended to postpone the vesting. *In Re Norris, supra.* What the settlor here did in par. (j) was to give to the female issue of the designated beneficiaries an annuity from the net income of the trust estate which was to be paid to them annually at the close of each corporate fiscal year. He specifically excluded the distribution of the income provided for in (j) I from his general direction set out in sec. 1 of art. II that gifts of income made in that section were to be paid quarterly. We think this exclusory provision is significant of the settlor's intention that the female issue of the designated beneficiaries in (j) I were to be entitled to receive an annuity from the net income of the estate at the end of each fiscal year of the corporation on the condition that they be living at such time. This, in our opinion, clearly prescribed a condition precedent to the entitlement of such female issue and persuades us that the settlor intended that the vesting of such annuity would be deferred until the close of the fiscal year, at which time it would vest in possession to such female issue as were then living. See *Graham* v. *Miller,* 46 F. Supp. 900, 902. Because we take this view, we see no merit in the contention that the estate of Elizabeth was vested as of May 8, 1956.

These respondents contend also that an application of the rule of construction prescribed in §15-7-16 to the limitations under consideration here would retroactively impair

property rights that had been established or vested before it was enacted. To so apply the rule, they contend, would be violative of the constitutional rights of most, if not all, of the beneficiaries. The substance of this contention is that the rule of construction prescribed in the statute does not constitute a mere change in an evidentiary rule but in fact would, if applied, give to the words "children," "issue," and "descendants" a meaning different from that attributed to them by the settlor when he executed the instant deed of trust. This effect, they argue, would be the same with respect to interests whether vested or contingent. With this contention we are unable to agree, being of the opinion that it is based upon a misconception of the purpose of the rule of construction prescribed in the statute.

That rule, in our opinion, is merely a rule of evidence concerned with the burden of proof. We perceive no provision thereof which would require us to construe it as operating to alter the past act of the settlor. It relates only to the policy and demands of the law concerning proof at the time of construction. In other words, the legislature did not intend that this rule was to have a retroactive application to the acts of a settlor. Rather, its language clearly imports futurity, giving it a prospective application at the time such instruments are construed. Its purpose was to assist the courts in ascertaining the intent of the settlor by fixing the evidentiary burden at the time of construction.

The respondents, in effect, are arguing that when this rule of construction is applied to the limitations in a deed of trust to the issue of an adoptive parent, an adopted child will by force of the statute be included within that limitation unless the statute is rendered inoperative by the occurrence of a condition subsequent, that is, an intention to exclude an adopted child expressed in or necessarily implied from the terms of the instrument. We do not agree. It is our opinion that where there exists in the terms of

the instrument an intent to exclude an adopted child, either express or necessarily implied, such circumstances constitute an exception under which the rule of construction may not be applied.

Where a settlor includes a gift to the lawful issue of an adoptive parent in a deed of trust, absent from such deed either an express or necessarily implied intent to exclude the adopted child, the use of such language in the limitation by the settlor constitutes prima facie evidence of his intent to include therein the adopted child. However, we perceive nothing in the statute indicating a legislative intent to preclude those opposing the inclusion of an adopted child from introducing evidence to overcome the prima facie case, but the clear implication of the statute is that the burden of going ahead with such evidence is upon those opposing the inclusion of the adopted child. This, in effect, reverses the burden of proof as it was fixed by the decisions of this court prior to the enactment of §15-7-16. See *Union Trust Co.* v. *Campi* and *Rhode Island Hospital Trust Co.* v. *Sack, supra.* In enacting this rule, the legislature did not contemplate that, absent from the deed an express or necessarily implied intent to exclude an adopted child, such adopted child is by force of the statute included within the limitation. Such inclusion remains a matter dependent upon the intention of the settlor as ascertained by the court from the evidence adduced on that issue including evidence resulting from an application of that rule. For this reason we conclude that the rule of construction prescribed in §15-7-16 is a rule of evidence.

It is our opinion then that the rule of construction prescribed in §15-7-16 does not relate back to the creation of the trust here under consideration or give to the words therein employed by the settlor a different meaning from that in which he used them. It relates rather to the manner in which proof will be produced as to the intention with which the settlor employed such language at the time when

the court seeks to determine that intention in construing the instrument. In *Langley* v. *Langley, supra,* this court said at page 622: "A statute which makes a new rule of proof acts prospectively and with reference to the time when proof is to be made." For this reason we are persuaded that the statute does not operate retroactively to impair constitutional rights of any beneficiary.

These respondents contend further that the rule of construction prescribed in §15-7-16 has no application to limitations in deeds of trust other than those which contain the specific words "lawful issue." They argue that where the language of the limitation is to "children" or "issue" as in the deed of trust here under consideration, the rule of construction above referred to may not be invoked. The purpose of the legislature in enacting this rule of construction is clear. Where the intention of a settlor as to the inclusion of an adopted child within a limitation is rendered obscure by the language of the limitation, the legislature intended to require the court to apply the rule so that language limiting the gift to the lawful issue of an adoptive parent would constitute prima facie evidence of an intent to include the adopted child within the limitation. When the effect of the rule is viewed in the light of the legislative purpose, it is difficult to perceive that the phrase "lawful issue" was used by the legislature in a restricted sense or limited to any technical meaning.

The respondents argue that had the legislature intended that the rule of construction be applicable to limitations which contain the word "child" or "issue," it would have specifically so stated. It must be conceded that courts frequently rationalize in this manner when in construing enactments it appears that the legislature could, by so acting, have avoided the creation of a patent ambiguity in the legislation. However, it is neither the prerogative nor the duty of the courts, when construing legislation, to require the legislature to employ specific phraseology and on

168

the basis of its failure to do so to judicially amend the statute. This is particularly true where, had the legislature attempted an enumeration of the situations to which a statute would have application, it would have created a substantial doubt as to the extent that it intended to include within the scope of the legislation other similar situations.

It is our opinion that the legislature used the words "lawful issue" in a comprehensive sense and with an intention to give to the rule of construction a broad area of application. It did so, in our opinion, with the intention that it would be applied to any limitation wherein the language employed by the settlor, while ambiguous, is susceptible of being reasonably related to his intention either to include or exclude an adopted child from his bounty. In other words, it is our opinion that the words "lawful issue" in this rule are not to be read in a narrow sense or given a technical meaning. They are to be construed as being sufficiently comprehensive to include any language of limitation that in the attendant circumstances reasonably gives rise to uncertainty as to whether an adopted child is intended by the settlor to be included therein.

These respondents have pressed other contentions concerning the extent to which the rule prescribed in §15-7-16 is applicable in the instant case. We are persuaded that all of these are predicated upon a view that the statutory provisions prescribing the rule are to be given a restricted and technical meaning. We are unable to agree. Whether statutes relating to adoption are generally to be strictly construed as in derogation of the common law, it is well settled that such of these statutes as are intended to integrate adopted children into family units and thus promote the public interest in the preservation of the family are to be liberally construed in favor of the adopted child. See *Batcheller-Durkee* v. *Batcheller*, 39 R. I. 45, 50.

We have also considered other contentions of respond-

ents wherein they urge that adopted children are not to be included within the pertinent limitations. These contentions are based, in our opinion, upon the proposition that in the *Campi* case, *supra,* we held as a rule of substantive law that a limitation to children includes only those who are in the blood line. This is a misconception of the rule in *Campi,* for the law is well settled that the inclusion or exclusion of an adopted child is a matter dependent upon the settlor's intention in that respect. In the *Campi* case we merely invoked a rule of construction that was of judicial origin and designed to assist in ascertaining what the testator's intent in this respect was, that is, that a limitation to children usually does not include an adopted child unless it appears that the testator intended to include such child. For this reason we consider as being without merit such contentions as are premised upon the view that under the decisions of this court prior to 1956 a limitation to children was inclusive only of blood children.

We now reach the decisive question in this case, that is, whether the limitation to the "children" of Wood Prince set out in art. II, sec. 1, par. (h), of the deed of trust is to be construed as including a child that was adopted by Wood Prince. Whether such an adopted child is a "child" within the meaning of the word "children" as used in the limitation depends entirely upon the intent of the settlor. Because we take the view that the rule of construction prescribed in §15-7-16 is applicable to the relevant limitation here, it is our conclusion that the use of the word "children" by the settlor in the pertinent limitation constitutes prima facie evidence that he intended that a child adopted by the designated beneficiary would be included within the limitation to the "children" of said beneficiary.

It becomes our duty then to examine the language contained in other provisions of the deed of trust and the circumstances that were attendant upon its execution and to determine whether there is to be found therein evidence

of a contrary intention on the part of the settlor that will be sufficient to overcome the prima facie case. After a thorough examination of the record, we have come to the conclusion that nothing appears either in the provisions of the deed of trust or in the circumstances attendant upon its execution that has sufficient probative force to overcome the prima facie case arising out of an application of the rule of construction.

It is our opinion that question (a) must be answered in the affirmative, that Alain is a child of Wood Prince within the limitation to the "children" of Wood Prince contained in art. II, sec. 1, par. (h); that question (e) is to be answered in the affirmative also, that Barbara, as a natural child of Alain, is an "issue" within the limitation to the "female children and more remote female issue" of Wood Prince in art. II, sec. 1, par. (j), subdiv. I; and that Barbara, as a more remote female issue of Wood Prince, should receive from the trustees that portion of the net income of the estate distributed under art. II, sec. 1, par. (j), subdiv. I, to which she, as such issue, is thus entitled.

On July 10, 1961 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

CONDON, C. J., and FROST, J., dissent.

## ON MOTION FOR REARGUMENT.

### JULY 21, 1961.

PER CURIAM. After our opinion in this case was filed, certain of the respondents, with permission of the court, filed a petition for leave to reargue and a supplemental petition for leave to reargue, setting out in each of these petitions certain reasons in support of their contention that justice requires a reargument of the case. The attorney general of the state has expressly joined in these petitions for leave to reargue. The reasons set forth in each of these

petitions have been carefully examined by the court, and it is the conclusion of the majority thereof that our attention has not been directed to any pertinent issue of law which has not been determined by the majority of the court or to any material evidence that has been overlooked or misconceived by the court.

Referring with particularity to topic III of the supplemental petition for leave to reargue, the court notes that these respondents suggest that the majority have overlooked their contention that the provisions of G. L. 1956, §15-7-16, were not intended by the legislature to have the comprehensive application that has been given them by the majority of this court in the instant case. The substance of such contention is that the rule of construction set out in §15-7-16 was not intended by the legislature to apply to cases involving children who were adopted by the adoptive parent in jurisdictions other than Rhode Island.

We would direct the attention of these respondents to certain language employed by the majority in the opinion, which reads in part as follows: "These respondents have pressed other contentions concerning the extent to which the rule prescribed in §15-7-16 is applicable in the instant case. We are persuaded that all of these are predicated upon a view that the statutory provisions prescribing the rule are to be given a restricted and technical meaning. We are unable to agree." In the opinion the majority then went on to state that the statute in this regard would be construed liberally in favor of the adopted child. Among the contentions to which the court was referring when it used the above-quoted language in the opinion was that to which the respondents have referred in topic III of the supplemental petition for leave to reargue, and it is the opinion of the majority that such contention of the respondents was neither overlooked nor misconceived.

The majority of the court having carefully considered all the reasons set out for reargument in both the petition

and supplemental petition are of the opinion that all of them are without merit.

Motion denied.

*Swan, Keeney & Jenckes; Winston, Strawn, Smith & Patterson,* Chicago, Ill.; *Dana M. Swan, Arthur D. Welton, Jr.* (Chicago), *Thomas S. Tyler* (Chicago), for complainants.

*J. Joseph Nugent,* Attorney General; *Albert J. Hoban,* Special Assistant Attorney General, for respondent.

*Graham, Reid, Ewing & Stapleton; Migdal & Low,* New York, N. Y., for respondents Helen Elizabeth Anna Prince and *Alfred B. Stapleton,* Guardian ad litem, for minor respondents Elizabeth J. M. Prince and Frederick H. Prince 4th.

*Claude R. Branch; Milbank, Tweed, Hope & Hadley,* New York, N. Y., for respondents Frederick H. Prince, Jr. and Virginia M. Prince.

*Claude R. Branch, James J. Higginson,* for respondents Frederick H. Prince 3d and Josefa Fay Danek Prince.

*Tillinghast, Collins & Tanner,* for Colin MacRae Makepeace, Guardian ad litem for minor respondents William Wood Prince, Jr., Edward Alexander Wood Prince and certain other respondents.

*Claude R. Branch, Harrison Tweed* (NY), *Colin MacRae Makepeace, Harold E. Staples, Lester C. Migdal* (NY), *Alfred B. Stapleton, James J. Higginson, Paul C. Lambert* (NY), *Robert A. Mercer, William G. Dakin* (NY).

*Charles H. Drummey,* for respondents Bernard Henry-Wood, William Wood Prince, individually, and Eleanore de Ricou.

*Hinckley, Allen, Salisbury & Parsons, Stuart H. Tucker,* for respondent Alain Wood Prince.

*Joseph A. Bevilacqua,* Guardian ad litem for future issue Alain Wood Prince.

*Edwards & Angell, Edward F. Hindle,* for Walter A. Edwards, Guardian ad litem for respondent Barbara Eleanore Wood Prince.