511 S.E.2d 98

**Jack P. GORMAN, Respondent,**

v.

**SOUTH CAROLINA REINSURANCE FACILITY, Appellant.**

No. 2926.

Court of Appeals of South Carolina.

Heard Dec. 9, 1998.

Decided Jan. 18, 1999.

Refiled Jan. 25, 1999.

Rehearing Denied Feb. 27, 1999.

---

Thomas C. Salane, of Turner, Padget, Graham & Laney, of Columbia, for appellant.

Henry L. Hamilton, of Ratchford & Associates, of Columbia, for respondent.

HEARN, Judge:

This appeal involves whether an adult adoption qualifies a person as a "parent" under South Carolina Code section 38–77–590 such that the adoptive parent may receive a transfer of "designated producer" status from the South Carolina Reinsurance Facility (Facility). The Facility Board of Governors

(Board) declined to approve a transfer of designated producer status to Jack P. Gorman, who became the "parent" of a designated producer through adult adoptive proceedings. Gorman appealed to the circuit court. The circuit court reversed the Board's decision. The Facility appeals. We reverse.

## FACTS

The material facts of this case are undisputed. Gorman, age 37 at the time of trial, is a licensed property and casualty insurance agent who began working for A.G. Burnett, age 72 at the time of trial, at Burnett's insurance agency in 1981. Sometime prior to 1985, the Chief Insurance Commissioner appointed Burnett a designated agent for the Facility.[1]

In 1982, Gorman and Burnett orally agreed that Gorman would be primarily responsible for the day-to-day operation of Burnett's agency. The two also agreed Gorman would eventually acquire an ownership interest in the agency. In 1985, Gorman and Burnett entered into two written agreements. The first agreement provided for an installment sale of the agency real estate and improvements. The second agreement (Agreement) provided for an installment sale of the agency business to Gorman. Pursuant to the terms of the Agreement, Gorman agreed to pay Burnett the sum of $140,000, plus interest, for "all existing accounts, accounts receivable, rights to renewals, contract rights with insurers, office equipment, supplies, goodwill and any other asset, whether tangible or not, of any type associated with the conduct of the business regardless of the type of insurance being written."

In 1993, Gorman petitioned the family court for an order adjudicating him Burnett's adoptive father. By order dated August 16, 1993, the family court approved the adoption, ruling that "[b]y way of adoption, Mr. Gorman becomes the single parent of Mr. Burnett." In approving the adoption, the family court recognized that "certain insurance laws proscribe the transfer of [designated agency status] to any, save the [designated] agent's 'spouse, child, *parent*, brother or sister' "

---

1. In 1985, jurisdiction and control over the designated producer program was transferred from the Commissioner to the Facility. S.C.Code Ann. § 38–77–590(b) (Supp.1997).

quoting South Carolina Code section 38–77–590(f) (Supp.1997) (repealed by 1997 Act No. 154 § 30, effective Jan. 1, 2006). Nonetheless, the family court expressly found "the adoption [was] not attempted for any fraudulent purpose."

On February 24, 1994, Gorman applied to the Facility for approval of the transfer of Burnett's designated producer status. Simultaneously, Burnett submitted a letter to the Board indicating his retirement and requesting that his designated producer status be transferred to Gorman. On July 11, 1995, the Board voted to decline approval of the transfer. Gorman sought reconsideration of the decision. After a contested hearing, the Board ruled that Gorman's adoption of Burnett did not create a genuine parental relationship within the meaning of section 38–77–590(f). More specifically, the Board determined an adult adoption conflicts with the legislative intent proscribing the sale or assignment of designated producer status and, therefore, that an adult adoption differs in legal effect from a child adoption.

Gorman appealed to the circuit court. By order dated October 21, 1997, the circuit court reversed the Board's decision. In so ruling, the circuit court reasoned that were Burnett to die intestate, section 38–77–590(f), which authorizes transfer of designated producer status upon the agent's "retirement, incapacity, or death," would permit the transfer of his designated producer status to Gorman through intestate succession. The circuit court found that section 38–77–590 does not distinguish between natural and adoptive parents with respect to transfers of designated agency status. The circuit court also reasoned that had the legislature intended to limit the legal effect of adult adoption in this arena, it easily could have expressly done so.

### Standard of Review

In an appeal from the Board, the appellate court may not substitute its judgment for that of the Board as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. S.C.Code Ann. § 1–23–380(A)(6) (Supp.1997). In this case, the issue of interpretation of the statute is a question of law for the court. *Charleston County Parks & Recreation Comm'n v. Somers,*

319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995) (the determination of legislative intent is a matter of law).

## *Discussion*

■  On appeal, the Facility argues the circuit court erred in finding Gorman's adult adoption of Burnett qualifies him as Burnett's parent for purposes of transferring designated producer status under section 38–77–590(f).  We agree.

Section 38–77–590(f) provides:

The designation of a producer by the director or his designee or the governing board is transferable to a spouse, child, parent, brother, or sister of the producer upon the designated producer's retirement, incapacity, or death.  The duties of a designated producer may be performed by one or more qualified employees of the producer or the producer's corporate agency.

The language of section 38–77–590(f) is, on its face, plain and unambiguous.  The circuit court judge correctly held that the statute makes no attempt to distinguish between natural and adoptive familial relationships.  However, we reverse because the legal effect of an adult adoption is limited by a specific provision of the South Carolina Adoption Act.

All the normal rights, duties, and legal consequences of the natural parent-child relationship created by child adoptions do not attach in the case of adult adoptions.  The adult adoption statute states: "The provisions of Sections 20–7–1650 through 20–7–1770 and Section 62–2–109 do not apply to the adoption of an adult person." [2]  S.C.Code Ann. § 20–7–1825 (Supp. 1997).  South Carolina Code section 20–7–1770(A), one of the provisions which specifically does *not* apply to adult adoptions, states:  "After the final decree of adoption is entered, the relationship of parent and child and all the rights, duties, and other legal consequences of the natural relationship of parent and child exist between the adoptee, the adoptive parent, and the kindred of the adoptive parent."

---

**2.**  The statute goes on to say that "a decree of adoption may be entered which has the legal consequences stated in section 62–2–109." S.C.Code Ann. § 20–7–1825.  Presumably, this means that although a parent-child relationship is not created, the rights of intestate succession do apply to adult adoptions.

Indeed, pursuant to South Carolina Code section 20–7–1825, the *only* "legal consequences" which flow from an adult adoption are those set out in South Carolina Code section 62–2–109, which provides:

If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

(1) from the date the final decree of adoption is entered, and except as otherwise provided in § 20–7–1825, an adopted person is the child of an adopting parent and not of the natural parents except that adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and that natural parent.

■ If a statute's language plainly and unambiguously conveys a clear and definite meaning, then the court has no right to employ rules of statutory construction to look for or impose another meaning. *Paschal v. South Carolina Election Comm'n,* 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995); *Carolina Power & Light Co. v. City of Bennettsville,* 314 S.C. 137, 139, 442 S.E.2d 177, 179 (1994); *Lester v. South Carolina Workers' Comp. Comm'n,* 328 S.C. 535, 493 S.E.2d 103 (Ct. App.1997), *cert. granted,* (June 17, 1998).

■ The Facility contends that the plain meaning of South Carolina Code section 20–7–1825 limits the legal effect of Gorman's adoption of Burnett to purposes of intestate succession. We agree. Although Gorman became Burnett's parent for purposes of intestate succession, he did not assume "all the rights, duties and other legal consequences" connected with the natural relationship of parent and child. S.C.Code § 20–7–1770(A) (Supp.1997). He therefore cannot legally qualify as a "parent" for purposes of section 38–77–590(f).

The trial court noted that were Burnett to die without a valid will, section 38–77–590(f), in conjunction with the law applicable to adult adoptions, would permit the transfer of the designated producer status to Gorman through intestate succession. The trial judge reasoned that because section 38–77–590(f) places retirement and death on the same footing, there is no clear reason to judicially create a distinction between the two circumstances. However, this reasoning ignores the clear statutory mandate that adult adoptions do not have the same

legal consequences as child adoptions. The legislature chose to limit the legal consequences of adult adoptions to intestate succession. It is not the province of this court to question the wisdom of this decision.

For the foregoing reasons, the decision of the trial court is **REVERSED.**

CONNOR and STILWELL, JJ., concur.