[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is a Petition filed by Fleet National Bank ("Fleet"),[1] seeking instruction as to the proper construction and distribution of two trusts established by decedent Art Hadley (Art Hadley's Living Trust and Art Hadley's Testamentary Trust) and one trust established by decedent Frances E. Hadley (Frances Hadley's Testamentary Trust) (collectively the "Hadley Trusts"). Fleet serves as the Trustee of each of the Trusts, and has filed a Second Amended Petition asking for an order of this Court in aid of the construction of these trusts, and for a determination of the proper distribution of the assets thereof. Several interested parties, discussed below in greater detail, have asserted conflicting claims to the Hadley Trusts.
The jurisdiction of the Court to resolve these conflicts relative to the construction of these trusts is pursuant to G.L. 1956 Chapter 30 of title 9, the Uniform Declaratory Judgments Act. Section 9-30-4 provides as follows:
 Any person interested as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, person who is mentally incompetent or insolvent, may have a declaration of rights or legal relations in respect thereto:
 (1) To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;
 (2) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or
 (3) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.
 Facts and Travel The Parties and their Interests
In connection with the Second Amended Petition, the parties have filed with the Court an Agreed Statement of Facts, and a document entitled "Relevant Court Record," which includes the Second Amended Verified Petition, and the exhibits incorporated by reference therein. By letter to the Court dated June 10, 2004 from counsel to the Trustee, with copies to counsel for all interested parties, it was represented to the Court that the parties were in agreement that the Statement of Facts and the Relevant Court Record were all that was necessary for submission of this case to the Court for decision. Each of the interested parties has filed supporting legal memoranda. None of the parties has requested an evidentiary hearing. Accordingly, the Court will render its decision based upon the parties' agreement as to the material facts. Following is a summary of such facts as gleaned from the agreed submissions.
Art Hadley died on May 27, 1941, survived by his wife, Frances Hadley, and his two children, Thomas P. Hadley and Sarah Louise Hadley. Thomas Hadley married Betty Hadley on March 8, 1962. At the time of their marriage, Betty Hadley had two children from a previous marriage, Janet Hunt and Lucille Foster. Frances Hadley died on August 25, 1968. Fourteen years after his marriage to Betty Hadley, Thomas Hadley adopted both Janet Hunt and Lucille Foster on March 11, 1976, at which time both children had reached the age of majority. In 1993, Thomas Hadley died, having had no natural born children but survived by Betty Hadley, Janet Hunt, and Lucille Foster, all of whom are still living. Sarah Hadley died childless, having never married, on January 3, 2002. Sarah Hadley's death triggered the distribution of the three Hadley Trusts presently in dispute.
The parties who have asserted an interest in the Hadley Trusts, and their relationship to the Hadleys, are the following: (1) Janet Hunt and Lucille Foster are the adopted children of Thomas Hadley; (2) Marcia Hanrahan is the executrix and a potential beneficiary of Sarah Hadley's estate; (3) Cynthia Gay is a potential beneficiary of Sarah Hadley's estate; (4) Allyson Gay, Wendy Gay, Robert Seeley, Diana Robertson, Suzanne Beyer, Cynthia Gay, Sheila Gay Franklin, Reverend Ronald Gay and Wylma Cooley are potential beneficiaries of Art Hadley's estate; (5) Stephen Lucas, Donald Lucas, Jeffery C. Lucas, Fay C. Drummond, Raymond J. Harrison, R. Carol Justice, Clair Perry, Elizabeth Perry Robinson, Brigette Perry Young, Sigrid Perry Reddon, Sharon Perry Glover, Eugene E. Perry II, Jane Cranston and Bruce Allsop are potential beneficiaries of Frances Hadley's estate.
This case was originally filed by Fleet, as Trustee, in December, 2002. At that time the Court appointed three guardians ad litem: one to represent Art Hadley's heirs-atlaw defined as of the time of Sarah Hadley's death (other than Janet Hunt and Lucille Foster); one to represent Frances Hadley's heirs-at-law, determined as of the date of Sarah Hadley's death (other than Janet Hunt and Lucille Foster); and one to represent the Estate of Thomas Hadley.
After the Court received reports from two of the guardians ad litem, and all interested parties were notified thereof, the interested parties were allowed an opportunity to proceed individually or collectively to respond to the Fleet petition. After the Court was advised that all interested parties had retained counsel to represent their interests herein, two of the guardians ad litem were discharged from their responsibilities, and the parties responded to Fleet's Second Amended Petition.
 Art Hadley's Living Trust
Art Hadley's Living Trust, executed on January 15, 1936, originally provided for a trust for the benefit of himself and his wife, to terminate upon the last of their deaths and be distributed to their two children. Art Hadley's Living Trust was amended on three occasions. In accordance with the December 9, 1940 amendment, the duration of the trusts was extended through the lives of each of the Hadley children, Thomas and Sarah.
The final version of the trust, including the amendments thereto, provides in pertinent part that after the death of the survivor of Mr. and Mrs. Hadley and in the discretion of the trustee, the Trust income was to be paid for the benefit of Art Hadley's two children, Thomas and Sarah Hadley. Upon the death of the last survivor of his children, the trust terminated and the corpus was to be distributed in fee simple to the children and issue then living of his two children, in equal shares per stirpes. If, however, Art Hadley's children left no surviving issue, the trust contained a failure provision. The failure provision provides that the corpus be distributed as follows:
 "In case of the total failure of all of the trusts hereinbefore provided for with respect to the final disposition of the principal of the trust estate or any shares thereof, the Trustee shall transfer, convey and pay over the then principal of the trust estate, or such shares, as the case my be, discharged of these trusts, to and among those persons who would then be entitled to the personal estate of the Settlor under the laws of said State of Rhode Island had he then died intestate, a domiciled inhabitant of said State, according to the statutes of distribution then in force in said State, and in the shares and proportions provided by said statutes." (Fleet Exhibit A).
 Art Hadley's Testamentary Trust
Art Hadley's Testamentary Trust, consisting of the residuary of his estate, mirrors his Living Trust, with the exception that his Testamentary Trust does not contain the above-mentioned failure clause. Specifically, Art Hadley's Testamentary Trust provides in pertinent part that after the death of the survivor of Mr. and Mrs. Hadley, and in the discretion of the trustee, the Trust was to continue for the benefit of his two children, Thomas and Sarah Hadley. Upon the death of the last survivor of his children, the trust terminated and the corpus was to be distributed in fee simple to the children and issue then living of his two children, in equal shares per stirpes.[2]
 Frances Hadley's Testamentary Trust
Frances Hadley's Testamentary Trust, executed on February 12, 1965 and amended by codicil on June 9, 1965 and September 26, 1965, consisted of the residuary of her estate. Upon her death, the residuary was divided into two separate trusts. One trust was to continue for the life of Sarah Hadley, and upon her death it was to be distributed to her issue perstirpes. The second trust was to continue for the life of Thomas Hadley, unless upon his death, his widow was living, in which case it would continue until her death. Upon the death of the survivor of Thomas or Betty Hadley, the assets of the trust were to be distributed to issue of Thomas Hadley per stirpes.
Frances Hadley's Will, unlike the instruments created by Art Hadley, defines the term issue. Paragraph D of Article First states: "[t]he term `issue' as used in this will, with reference to issue of mine or of a child of mine, shall include adopted children of that child and issue of such adopted children." Additionally, Frances Hadley's Testamentary Trust contains a failure provision. That provision reads as follows:
 "If at the time provided for the distribution of any share held in trust under this will no issue of mine are living, the trustee shall divide and distribute the share among those persons who would then be my next of kin entitled to distribution thereof if I then died intestate, unmarried, domiciled in the State of Rhode Island and possessed of such share as my personal estate, and the division and distribution shall be in shares and proportions provided in the law of Rhode Island then in force for distribution of personal property of an intestate decedent." (Fleet Exhibit A).
Art Hadley's heirs-at-law concede that they have no interest in Frances Hadley's Testamentary Trust. See Art Hadley's heirs-at-law Memo at 19-20.[3]
 Analysis
The central issue before this Court is the right of adult adoptees to inherit from the lineal ancestors of their adoptive parents. Section15-7-16 of the Rhode Island General Laws governs the inheritance rights of adoptive kindred. Specifically, this section provides in pertinent part:
 "(a) A child lawfully adopted shall be deemed, for the purpose of inheritance by the child and his or her descendants from the parents by adoption, and for the purpose of inheritance by the parents by adoption, and the lineal and collateral kindred of the parents by adoption, from the child and his or her descedants, and for all other legal consequences and incidents of the natural relation of parents and children, except as provided in § 15-7-17, the child of the parents by adoption the same as if he or she had been born to them in lawful wedlock. In the construction of any instrument, whether executed before or after May 8, 1956, a child so adopted and the descendants of the child shall be deemed within a limitation to the lawful heirs, issue, children, descendants, or the like, as the case may be, of the parent or parents by adoption, unless a contrary intention shall appear by the terms of the instrument or unless the particular estate so limited has vested in and as to the person or persons entitled to it on April 20, 1962; provided, that this sentence shall not apply in the construction of any instrument as to any child who is over the age of eighteen (18) years at the time of his or her adoption and who is adopted after the death of the maker of the instrument." G.L. 1956 § 15-7-16(a) (emphasis added).
The Rhode Island Supreme Court has repeatedly held that "when the language of a statute is clear and unambiguous, [the] Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Tinney v. Tinney, 799 A.2d 235,237 (R.I. 2002) (citing Mottola v. Cirello, 789 A.2d 421,423 (R.I. 2002)). Section 15-7-16(a) clearly provides that adoptees are entitled to the same inheritance rights as natural born children. The only exception to this rule is that in the construction of any instrument, a child over the age of eighteen years old will not be treated as an heirat-law if he/she was adopted subsequent to the death of the maker of the instrument.
 The Distribution of Art Hadley's Living Trust
The plain language of § 15-7-16(a) precludes the adopted daughters of Thomas Hadley from taking as beneficiaries under the trust instrument, which provided for the fee simple, per stirpes, distribution to the living issue of Art Hadley's two children. The fact that Thomas Hadley adopted his two daughters, Janet Hunt and Lucille Foster, as adults, and after the death of the maker of the trust instrument, precludes Janet Hunt and Lucille Foster from being treated as beneficiaries under a construction of the trust instrument. According to the language of the trust, however, if there is a total failure of the trust with respect to the final disposition of the trust principal at the time of the distribution, then the trust fails and the laws of intestacy in effect at the time of the trust failure govern the distribution of the trust assets.[4] In that regard, the Rhode Island Supreme Court's examination of § 15-7-16(a) in Tinney v. Tinney,799 A.2d at 237-38, is germane to the distribution under the intestacy laws.
In Tinney, the Rhode Island Supreme Court held that §15-7-16(a)'s distinction between adult adoptees and minor adoptees is not applicable under the laws of intestacy. In that case, the adoptive parent, Ruth Tinney, was an eighty four-year old woman and the adoptee, Kevin Tinney, a thirty eight-year old man. Id.
at 235. Upon Ruth Tinney's death, Kevin Tinney moved the Court to declare his inheritance rights under the laws of intestacy, and Ruth Tinney's natural born son, Donald Tinney objected. Id. At 236. Donald Tinney asserted that § 15-7-16(a) does not include adult adoptees because §15-7-16(a) specifically refers to "child" as opposed to persons. Id. Rejecting this narrow interpretation of §15-7-16(a), the Court found "the Legislature intended the term `child' to mean son or daughter of a parent, regardless of age, and that there was no distinction intended between the inheritance rights of a `child' adopted as a minor and `persons' adopted as adults."Id. at 237-238. In reaching this conclusion, the Tinney
Court quoted from its decision in Prince v. Nugent,93 R.I. 149, 168, 172 A.2d 743, 754 (1961), wherein the Court held that "such * * * statutes as are intended to integrate adopted children into family units and thus promote the public interest in the preservation of the family are to be liberally construed in favor of the adopted child." Id.
Furthermore, the proposition that Tinney is not applicable in the instant case because Tinney concerned a decedent who made the active choice to adopt an adult son is unavailing. The Tinney Court did not premise its decision on the fact that Ruth Tinney herself adopted Kevin Tinney, but rather upon the Court's well established maxim "that adopted children `are deemed to be heirs of their adoptive parents, as if they were their natural children.'" Tinney, 799 A.2d at 237
(quoting In re Lisa Diane G., 537 A.2d 131, 132 (R.I. 1988)). Nothing in the Court's language suggests that Tinney's holding is limited to adult adoptees who have been directly adopted by the decedent. Moreover, such a narrow interpretation of Tinney's holding would undermine the Court's observation that the public interest is served by construing such statutes in favor of the adopted child. In addition, the only exception to the broad thrust of § 15-7-16(a) is that the statutory intent to include adopted children as heirs is limited only in one narrow instance — that is that "in the construction of any instrument" adult adoptees are excluded if adopted after the death of the maker. Since the instrument triggers the laws of intestacy, the Court is not engaged in the "construction of any instrument." Guided by the plain language of § 15-7-16(a) and Tinney's holding, this Court finds that the laws of intestacy in effect on January 3, 2002 give Thomas Hadley's adopted daughters the same inheritance rights as would be accorded his biological children, regardless of the age at which they were adopted.
Art Hadley's heirs have argued that there are significant public policy reasons for this Court to be wary of affording lifetime beneficiaries under testamentary devises a "blank check" to manufacture heirs by adoption that the testator/settlor never knew or even contemplated. See, e.g., Minary v. CitizensFidelity Bank Trust Co., 419 S.W. 2d 340 (Ky. 1967);Wilson v. Johnson, 389 S.W. 2d 634 (Ky. 1965); Estate ofMary Comley, 218 A.2d 175 (N.J.Super.Ct. 1966). In none of the cases cited to the Court, however, did the testator or settlor include in the instrument a specific failure provision invoking the laws of intestacy. Art Hadley, even though he had died before his son Thomas adopted the adult children of his wife Betty, was not silent on how he intended his trust to be distributed if for any reason, at the time of the termination of the trust, he did not have grandchildren who were able to take under the trust. He provided, in no uncertain terms, that in that case the laws of intestacy should govern the distribution. The Court is obliged to follow the intent of Art Hadley as expressed in the trust instrument.
Notably, the majority of jurisdictions recognize adult adopted children as enjoying the same rights under the laws of intestacy as natural-born children. See Gormanv. South Carolina Reinsurance Facility, 333 S.C. 696,511 S.E.2d 98 (S.C.Ct.App. 1999) (adult adoption statute limits the legal effect of adult adoption to intestate succession); see also N.J.S.A. 3B:5-9 (extending the intestacy rights of adoptive children under N.J.S.A. 2A:22-3
to persons adopted as adults). See generally Adam J. Hirsch, Colloquium: Deborah L. Rhodes Access to JusticeArticle: Default Rules in Inheritance Law: A Problem inSearch of its Context, 73 FORDHAM L. REV. 1031, 1089 (2004). Consequently, this Court finds that Janet Hunt and Lucille Foster, under the laws of intestacy in effect in 2002, are Art Hadley's heirs-at-law, and therefore Art Hadley's living trust should be divided equally between them.[5]
 The Distribution of Art Hadley'sTestamentary Trust
For the reasons stated above, according to the plain language of G.L. 1956 § 15-7-16(a), Thomas Hadley's adopted children may not take under a construction of the trust instrument as issue of the children of Thomas Hadley. In contrast to the living trust, however, Art Hadley's testamentary trust does not contain a failure clause, and there is no competent evidence by which this Court can justifiably incorporate the living trust's failure clause into the testamentary trust.[6]
Therefore, this Court must apply the laws of intestacy to the distribution of Art Hadley's testamentary trust, as they would generally be applied in a situation where the decedent died intestate. See G.L. 1956 § 33-6-30
("All real and personal property, not devised or bequeathed in the last will and testament of any person shall be distributed in the same manner as if the person had died intestate.")
In determining who are Art Hadley's heirs-at-law, the Rhode Island Supreme Court has held, in Champagne v.Fortin, 69 R.I. 10, 20, 30 A.2d 838, 843 (1943), that in the absence of language evidencing a contrary intent of the testator, the heirs-at-law are determined as of the date of the decedent's death. Although counsel for the Art Hadley heirs suggest that the doctrine set forth inChampagne is not representative of the modern trend to determine heirs as of the date of distribution, our Supreme Court has not departed from the Champagne rule of construction, despite having had the opportunity to do so. See Redmond v. Manufacturers Hanover Trust Co.,484 A.2d 906 (R.I. 1984).
At the time of Art Hadley's death, Frances Hadley, Thomas Hadley, and Sarah Hadley were all still living and therefore constitute his heirs-at-law. The laws of intestacy provide that the personal estate of a deceased person be distributed as follows: one half of the estate to the living spouse, and the remaining one half of the estate is to be divided equally among the decedent's children. R.I. Gen. Law. § 33-1-10. Accordingly, Art Hadley's Testamentary Trust should be distributed one half to Frances Hadley's estate, one quarter to Thomas Hadley's estate, and one quarter to Sarah Hadley's estate.
 The Distribution of Frances Hadley'sTestamentary Trust
Mrs. Hadley's Last Will and Testament (as modified in two subsequent codicils), placed the residuary of the estate into trust, and divided the trust estate into two equal shares, one for Thomas and one for Sarah. Thomas's share must remain in trust at this time, since his widow Betty is still alive and is entitled to some or all of the trust income or principal, at the discretion of the Trustee, for the remainder of her life. Sarah Hadley's share of the trust, however, must be distributed now.
Upon Sarah's death, her share of Mrs. Hadley's testamentary trust must be distributed to Sarah's issue then living per stirpes. Since Sarah died without children, the will (Paragraph C of the First Article) contains a "failure of issue" clause providing for the distribution to go to Frances Hadley's next of kin entitled to distribution under the laws of intestacy. Frances Hadley's next of kin under the laws of intestacy in effect on the date of the trust failure are Janet Hunt and Lucille Foster, her grandchildren by adoption.
The beneficiaries of Sarah Hadley's estate assert, however, that the words "adopted children" as contained in the will do not refer to adult adoptees, and therefore Janet Hunt and Lucille Foster do not have any inheritance rights under Frances Hadley's testamentary trust. Reply Brief of Marcia Hanrahan, As Executrix of the Estate of Sarah Hadley at 4-5. This argument misses the mark. Because Frances Hadley's daughter Sarah died without issue (adopted or natural), the "failure of issue" clause in the will was triggered. That clause requires that the trust assets be distributed to Frances' "next of kin entitled to distribution thereof if I then died intestate." For purposes of intestate succession, G.L. 1956 § 15-7-16(a) treats adopted children, whether adopted as adults or as minors, as next of kin for purposes of inheritance. See Tinney,799 A. 2d at 237-38. Mrs. Hadley's definition of "issue" in her will simply supports the statutory result that the adopted children of Sarah's brother Thomas, in this case Janet Hunt and Lucille Foster, are the proper parties to receive the distribution from Mrs. Hadley's testamentary trust which was to continue for the life of Sarah Hadley, and terminate upon Sarah's death.
 Conclusion
Based upon the above construction of the three Hadley trusts, the parties shall submit an appropriate order regarding the distribution of the assets of said trusts, and declaring the rights of the parties therein.
[1] The Court takes judicial notice that Fleet has recently been acquired by the Bank of America. Accordingly, Bank of America is presumably the real party in interest at this time. This action however, may be continued by the original party in the absence of a motion to substitute. See Super. R. Civ. P. 25(c).
[2] The original distribution scheme, like that in Art Hadley's Testamentary Trust, provided a fee simple transfer of the corpus to his children, Thomas and Sarah Hadley, upon the death of Art Hadley's wife, Frances Hadley. Thereafter, Art Hadley's Testamentary Trust was amended by codicil on December 9, 1940 to establish a trust for the benefit of his children, and to follow the distribution scheme outlined above.
[3] This Court notes that this concession is made with regard to Art Hadley's heirs-at-law. With regard to Cynthia Gay, who is a stakeholder as both an heir-at-law of Art Hadley and a beneficiary of the estate of Sarah Hadley, this Court will distinguish between these interests. Therefore, reference to Art Hadley's heirs-at-law includes Cynthia Gay in that capacity, but this consideration is separate and apart from Cynthia Gay in her capacity as a beneficiary of Sarah Hadley's estate.
[4] The law of intestacy relevant in the instant case is § 33-1-10, the statute governing personal property. That statute provides the following:
 "33-1-10. Surplus personalty not bequeathed. — The surplus of any chattels or personal estate of a deceased person, not bequeathed, after the payment of his or her just debts, funeral charges, and expenses of settling his or her estate, shall be distributed by order of the probate court which shall grant administration in the manner following:
 (1) The sum of fifty thousand dollars ($50,000) from the surplus and one-half (1/2) of the remainder to the widow or surviving husband forever, if the intestate died without issue.
 (2) One-half (1/2) of the surplus to the widow or surviving husband, forever, if the intestate died leaving issue.
 (3) The residue shall be distributed among the heirs of the intestate in the same manner real estates descend and pass by this chapter, but without having any respect to the life estate and discretionary allowance provided by §§ 33-1-5 and 33-1-6."
Section 33-1-1 is the statute that governs the manner in which real estates descend under the laws of intestacy. That statute provides the following:
 "33-1-1. Real estate descending by intestacy to children or descendants, parents, or brothers and sisters. — Whenever any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in equal portions to his or her kindred, in the following course:
 (1) First to his children or their descendants, if there are any.
 (2) Second if there be no children nor their descendants, then to the parents in equal shares, or to the surviving parents of such intestate.
 (3) Third if there is no parent, then to the brothers and sisters of the intestate, and their descendants."
[5] Those heirs arguing against inclusion of Thomas' adopted daughters as distributees under the laws of intestacy also argue that since Janet Hunt and Lucille Foster are barred by G.L. § 15-7-16(a) from taking directly under the trust instrument, it would be unjust to allow them to "back door" their interest through the failure provisions of the trust instrument. Although this presents an intriguing equitable argument, the Court is constrained by the explicit and unambiguous terms of both the trust instrument and the statute.
[6] Counsel for Hunt and Foster, as well as counsel for the heirs of Art Hadley, suggest that it must be presumed that because Mr. Hadley had executed a Second Codicil to his Will, and a Third Amendment to his Living Trust on the same day, it must be the result of a "scrivener's error" that the identical provisions for trust failure were not contained in both the Living Trust as well as the Testamentary Trust. Thus, these parties argue that Mr. Hadley's heirs, for purpose of the distribution of the Testamentary Trust, should be determined as of the date of the failure of the trust (2002), rather than the date of Mr. Hadley's death. This Court is not persuaded that such circumstances require the Court to rewrite the Testamentary Trust to include language used in the other instrument. The logic that the lack of inclusion was not intended is not persuasive. It is certainly equally arguable that skilled and capable estate planning professionals may have suggested that the trust set up in the will apply a different mode of distribution than that in the trust. The Court simply cannot assume that because the instruments were executed on the same day, and formed part of the same estate plan, that the failure provisions must be deemed identical.