[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on the complaint for declaratory judgment and for approval brought by the Trustees of the Frederick Henry Prince Deed of Trust dated June 3, 1932 ("Trust") wherein Frederick H. Prince IV and William Norman Wood Prince the presently serving Trustees seek judicial approval of the continued negotiation, execution and consummation of the reorganization of CMD Realty Investors, L.P. ("Management Company") in the manner and for the purpose as hereinafter set forth. Four of the living beneficiaries of the Trust joined by a Court appointed Guardian ad litem for a five-year-old contingent income and remainder beneficiary of the Trust join in opposition, at least at this time, to the proposed reorganization.
The four active defendants ("Objecting Beneficiaries") urge upon the Court that until the resolution and acceptance or other disposition of a Trust Accounting pending before this Court in connection with the Trust ("1999Accounting Action")[1] it would be inappropriate for the Court to rule so as to authorize the reorganization contemplated by the complaint herein. Further, they disagree with the proposition advocated by Trustees that the matters here in dispute urgently require resolution. Additional reasons for objections to the reorganization alleged by the Objecting Beneficiaries will, in due course, be discussed.
Some short historical background is necessary to appreciate the magnitude and nuances of the controversy before the Court. On June 3, 1932, Frederick Henry Prince executed a Deed of Trust (a copy of which with annotations reflecting family settlement agreements and judgments of the Rhode Island Superior Court is Plaintiffs' Exhibit 7). On a number of occasions our Supreme Court has been asked to interpret one or more provisions of the Trust.[2]
The record before the Court reflects that a principle asset of the Trust is the stock of a corporate entity, F.H. Prince and Co., Inc. (Prince) which since the inception of the Trust has been wholly owned by it. The primary asset of Prince is all of the stock interest of CMD Corp. ("CMD Corp."). CMD Corp. has a number of subsidiaries including CMD Properties, Inc. (which owns a real estate portfolio reportedly having a value of $300,000,000 plus or minus and constituting in value approximately 80% of the Trust's assets).
Included among CMD Corp. subsidiaries is CMD Realty Investor's, Inc., ("CMD, Inc.") which formerly was involved in the business of real estate management and development all with respect to the real estate portfolio owned by CMD Corp.
Since 1981 Stephen Ellenbogen, a non-trustee, non-beneficiary, non-family member, has been involved as a top echelon manager of the real estate empire which was the main asset as described above of the Trust. In 1985, Ellenbogen became President of CMD, Inc., Ellenbogen had/has a management team which to this day constitutes senior management and which operates the real estate management, development and investments of CMD — as the same has expanded and evolved over the years since Ellenbogen's hiring. A primary change in the nature of CMD business brought about at the suggestion of the senior management team was its entry into the commingled fund business with outside institutional investors so that in addition to managing the Trust's real estate portfolio today the primary operating entity, Management Company, also directs CMD Investment Fund, LP (a $100,000,000 limited partnership created in 1993); CMD Investment Fund II, LP (a $125,000,000 limited partnership created in 1995); CMD Investment fund III, LP (a $208,000,000 limited partnership created in 1997) and CMD Realty Investors IV, LP (a $287,700,000 limited partnership created in 1998), each of these funds primarily are invested in real property. Prince related entities invested in the four funds above-mentioned seriatim the sums of $20,000,000, $10,000,000, $18,000,000 and $15,600,000 for a total investment by Prince entities in the four separate commingled funds totaling in excess of $63,000,000.
In 1995, CMD Inc. was the entity managing not only the wholly owned real estate investment portfolio but also the outside or commingled investment funds as they were created. Also, CMD Inc. employed virtually all of the personnel involved in the enterprise.
Earlier in 1993, the Trustees had entered into "incentive compensation" profit sharing agreements with senior management which accorded senior management 50% of the profits derived from the property management business. Prior to that time senior management had been incentivized by being awarded 20% of the appreciation in value of the Trust owned real estate portfolio.
In 1997, Management Company was created by an agreement of limited partnership (Defendants' Exhibit 3) in which CMD Inc. was the sole general partner with a 50% interest and a general partnership known as CMD Management Partners consisting of the members of senior management was the sole limited partner holding the other 50% interest. That entity since 1997 has managed (1) all of the CMD Properties, Inc. wholly owned real estate portfolio and (2) the commingled investment fund portfolios. It also is the entity that today provides opportunity for employment, having in excess of 100 employees.
It should be noted that in connection with (a) entering into the commingled fund investment business; (b) awarding of profit sharing to senior management; and (c) creation of the Management Company among other things, no prior Court approval was sought or obtained. Further, the evidence before the Court shows that from the time of the 50% profit sharing arrangement with senior management, approximately $70,000,000 in profits from the real estate management business have been split with the Trust (directly or indirectly) receiving about $35,000,000 and the senior management group receiving approximately the same amount.
The present controversy stems from the contemplated natural termination of the Trust in the year 2019 (or sooner); certain disharmony between the Trustees and some of the beneficiaries and the impact that those factors would (or might) have on potential investors in future commingled real estate investment funds which Management Company and the Trustees wish to establish. The Trustees tell the Court that the estimated going forward value of Management Company is between $40,000,000 and $50,000,000.
Plaintiffs presented evidence in the form of testimony of the Trustees, members of senior management and an outside "expert" to the effect that the pending natural termination of the Trust (in the year 2019) — or premature termination, litigation pending with respect to the 1999 Trust Accounting Action and disharmony between the Trustees on one hand and the Objecting Beneficiaries on the other are issues which could have a material adverse affect on their ability to obtain investors in any future investment funds to be established and managed by the Management Company. The Trustees state that because a Trust related entity is the general partner of the Management Company and because of the inherent instability resulting from the issues above mentioned that they (the Trustees and the Management Company) have an obligation to disclosure these issues to any potential investor in connection with attempts to obtain investments into any new commingled investment fund. Plaintiffs' witnesses testified these disclosures would in their opinion deter such investors from investing into any such new fund. The Court accepts that testimony as sufficient evidence of the likely result testified to.
Essentially, Plaintiffs argue that the proposed reorganization will obviate the need for disclosure because the reorganized Management Company, while 50% owned by a Trust wholly owned entity, is structured so that day-to-day management will be controlled by senior management, and thus not subject to the vagaries associated with the issues above referred to. The Trust owned entity will have (1) veto rights only with respect to certain major decisions; (2) a continued right to 50% of the profits from any new investment fund while the status quo will be maintained as to the existing funds and the Trust's own real estate portfolio; (3) a right to terminate the Management Contract of the reorganized entity as to the Trust's wholly owned real estate portfolio (a) for cause (including failure to perform to industry standards) and (b) without any cause at any time after the exercise by the Trust owned entity CMD, Inc. of the "put" referred to in the next numbered provision; (4) at any time the right to put its interest in the reorganized Management Company to its 50% partner, the senior management group, which has a corresponding obligation to buy that interest for a price to be paid over time which is to be one-half the entity value as determined at the time of the exercise of the put all as provided in the documents evidencing the reorganization contemplated by the complaint herein.
The Trustees stress to the Court that neither their equity interest nor their profit participation are in any way modified by the proposed reorganization of the Management Company and further note that the existing portfolio (CMD's wholly owned portfolio) is not effected and that under the proposed reorganization the Trust would continue to profit from the management of new real estate investment funds to be managed by the reorganized Management Company without any obligation on the part of the Trust (or any of its wholly owned family of entities) to invest any Trust resources in such new investment funds.
The bottom line position of the Trustees is that they urge the Court to approve the contemplated reorganization as a proper exercise by them of their discretion as Trustees under the terms of the 1932 Trust, as a proper exercise by them of their business judgment and as being in the best interest not only of the 1932 Trust, but also of its beneficiaries.
Turning now to the contentions of the Objecting Beneficiaries. Initially those beneficiaries assert that the Trustees have failed to comply with their fiduciary duty to the beneficiaries in that their motivation to consummate the proposed reorganization of the Management Company is among other things to preclude employment opportunities for certain of the beneficiaries. These beneficiaries contend that by removing the opportunity for certain male beneficiaries to be employed by the Management Company that the Trustees own expectations with respect to principal distribution at the termination of the trust is enhanced.[3]
Thus, they suggest that Trustees have a conflict of interest. Further, these beneficiaries maintain that the reorganization benefits the Management Group but neither the Trust nor its beneficiaries. They contend that the Trustees have not exercised due care in connection with the proposed reorganization and that, in fact, the Trustees failed to exercise due care and act in a fiduciary manner in connection with certain issues covered by the 1994 accounting (1993 reorganization) and the yet to be approved 1999 accounting (1997 reorganization). In fact, the Objecting Beneficiaries specifically ask this Court to defer ruling on Plaintiffs' complaint until after hearing and final determination of matters encompassed by the 1999 accounting action which has as of this date not been assigned for hearing. The Court takes it that the Objecting Beneficiaries' position is that if the Court were to approve the proposed reorganization it would of necessity be approving matters contained in that accounting which may either be challenged or in any event be found to have been inappropriate or improper.
The Objecting Beneficiaries further assert that the Trustees were not sufficiently versed and/or knowledgeable about the presently contemplated reorganization and thus were not fully informed. In support of this claim, counsel for the Objecting Beneficiaries point to certain ". . . irresponsible provisions (of the reorganization documents) of which the Trustees claim not to be aware." Finally, these Beneficiaries also claim that through the proposed reorganization the Trustees shift control of approximately 80% or more of the Trust's worth from themselves as Trustees to the Management Group which, of course, if true, would be contrary to the terms of the 1932 Trust.
To the extent that additional facts are necessary for the Court's determination of the matter before it, such facts shall be set forth in the discussion which follows.
A central question before the Court is: Does the consummation of proposed reorganization represent either (1) an abuse of discretion on the part of the Trustees; or (2) fall within the presumption that the Trustees in agreeing to the reorganization acted on an informed basis, in good faith and in the honest belief that such action was in the best interest of (ultimately) the Trust and its beneficiaries, the so-called Business Judgment Rule. Are (1) and (2) essentially (a) the same, (b) overlapping or (c) totally different? If different under the facts and the law which standard here should be applied?
Turning now to the law which as found is to be applied to the established facts in order to reach a decision in this matter, the Court first believes it appropriate to differentiate between two roles played by the Plaintiffs in this matter. First, they are the presently acting Trustees under the 1932 Deed of Trust and in such capacity are vested with all of the powers and discretions therein contained.[4] Further, they are directors not only of Prince but also of the CMD wholly owned family of entities which are affiliated with or owned by Prince. There of course is a specific trust provision which permits Trustees to serve as directors of (in the broad sense) affiliated companies.[5]
To the extent, if any, that the duties and discretions of Trustees differ from those of directors, which set of rules or standards in determining whether to authorize the execution and implementation of the proposed Reorganization is here to apply? It is claimed that the Business Judgment Rule as adopted in Delaware and Illinois and as articulated in several Rhode Island trial court decisions including one by this Court,Heritage Health Care Services v. Beacon Mutual Ins. Co. (2004 WL 253547 (R.I. Super.)) creates a rebuttal presumption that directors have acted properly. In order to overcome and to rebut that presumption, the objecting party (here the Objecting Beneficiaries) must show that the directors have violated any one of a triad of fiduciary duties; that is to say, (1) due care; (2) loyalty and/or (3) good faith. If the Business Judgment Rule here is controlling, then a failure by Objecting Beneficiaries to sustain their burden of overcoming the presumption should result in Court approval of the reorganization.
The Court here notes that if Trustees are vested with discretion to act then its role is different, or is it then in the business judgment case? The Court, of course, never should substitute its judgment for that of the Trustees but only determine if the Trustees in acting as they have (or here as they desire to) have abused their discretion or have acted in contravention of the terms of the Trust. The Court notes that there need not be a dichotomy between the roles of Trustee on the one hand and director on the other. Indeed, in Bartlett v. Dumaine, 128 N.H. 497, 506,523 A.2d 1, 7 (N.H. 1986), the Court found no problem with the finding of a master that the trust in question was unique having features of a trust, as well as a corporation and further that the intent of the settler was to vest absolute control in the trustees of the trust property and the trust business. Where the trust estate includes, as it does here, the business entities (CMD) and the businesses in which they engage, the powers vested in Plaintiffs pursuant to the language quoted in footnote 4 above would seem to authorize their contemplated action here. While the differences between the two approaches may seem almost imperceptible because Trustees in addition to the abuse of discretion standard of course also owe to the beneficiaries of the Trust the highest degree of good faith, care, loyalty and integrity. It is clear to the Court that the triad spoken of in connection with the Business Judgment Rule and the duties owed by trustees to beneficiaries are similar if not exactly the same. Unless the Objecting Beneficiaries have established that one or more of those elements are not satisfied then unless the Court finds that the Trustees proposed reorganization constitutes an abuse of discretion on their part, or contravenes the provisions of the Trust, such reorganization should be approved because the Court should not substitute (1) its judgment in place of the discretion afforded the Trustees by virtue of the Trust Deed or (2) its Business Judgment for the Business Judgment inherent in the role of the Trustees as directors except as aforesaid.
Insofar as the issue presented in this case is: Do the Trustees have the discretion to enter into and to authorize the proposed reorganization? It is clear to this Court that in the abstract these Trustees are afforded such power by the broad grant from the Settlor of the Trust. (See footnotes 4 and 5.) Accordingly, the dispositive inquiries really are (1) Are the Trustees exercising the power honestly? (2) Do the Trustees have an improper motive? (3) Have the Trustees failed to use their judgment? and (4) Is the proposed reorganization beyond the bounds of the Trustees' reasonable judgment?
Clearly a question not to be addressed is: Would this Court in the first instance on a de novo basis approve the proposed reorganization? The Court's role as perceived by it in matters of this nature is not to substitute its (business) judgment for that of the Trustees but rather as set forth in Comment E to Section 187 of the Restatement (Second) of Trust:
 "If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use (his) judgment, or acts beyond the bounds of reasonable judgment. The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee."
Here it is alleged that one of the Trustees' motivations in agreeing to the reorganization is that as a consequence thereof they no longer will be in a position to insure employment to male descends of the Settlor and of (William Wood Prince). It is claimed that contrary to the standard articulated above this is a dishonest as well as an improper motive for agreeing to the reorganization. This claim is predicated on the provisions of Article II, Section 3 of the Trust which in part reads:
 "Upon the termination of the trust period, the Trustees shall pay over, transfer and convey free from trust and in such proportions as the Trustees shall, in their absolute discretion, deem best, fifty percent (50%) of the capital of the Trust Estate (a) to and among the male children and/or more remote male issue of myself and of my cousin . . . who are then serving F.H. Prince Co., Inc. as directors, officers or employees. . . ." (emphasis added).
It is urged upon the Court that as a result of the reorganization there will exist no meaningful opportunity perhaps for anyone other than the Trustees to qualify as potential recipients under the provisions of this section. Trustees counter this contention by arguing and the Court finds that under the express language used by the Settlor employment or service to a subsidiary or related entity is not ". . . serving F.H. Prince 
Co., Inc. as directors, officers, or employees" and in any event the evidence shows that all of the potential male heirs who so desire and who have sought employment with F.H. Prince Co., Inc. have received part-time employment with that corporation as member of its Corporate Investment Advisory Panel.
Further, this Court notes that under the provisions of Rhode Island law it is clear that even in the face of the absolute discretionary language contained in the Trust, the Trustees in seeking to exercise their powers under Section 2 of Article III would be constrained by the teaching ofArmington Trustee v. Meyer, a Rhode Island Supreme Court decision reported at 103 R.I. 211, decided by our Supreme Court in 1967. Under that case, the Trustees are directed ". . . to apply to the Superior Court and petition that Court to take over their duties whenever they are faced with a possible conflict of interests, . . ." and under the circumstances of that provision to request the approval of the Superior Court for the distribution to the extent they may determine to pay it to themselves.
Accordingly, the Court finds that this reason advanced by the Objecting Beneficiaries is insufficient as grounds for finding that the plaintiffs, either as Trustees or as directors subject to the Business Judgment Rule, should be precluded from negotiating, executing, and consummating the proposed reorganization.
A second position taken by the Objecting Beneficiaries suggests without proof that the whole reorganization scheme inures to the benefit not of the beneficiaries of the Trust or of the Trust itself, but rather to the benefit of senior management thus calling into question the issue of the loyalty of the Trustees/Directors to the Trust and to its beneficiaries. There is of course no contention by anyone in this case involved that plaintiffs do not under any set of circumstances owe the utmost good faith and loyalty to the Trust and to its beneficiaries. The Court finds that the Objecting Beneficiaries have failed to show that plaintiffs determination that it is in the overall best interest of the Trust and its beneficiaries to reorganize the Management Company in a manner which permitted the management group to change its status from a fifty percent limited partner interest to a fifty percent general partner interest and to appoint a majority of the members of the Board of Managers, while at the same time preserving to the Trust and its controlled entities veto rights with respect to certain partnership actions as set forth in Section 6.2(b) of the proposed Amended Restated Agreement of General Partnership of CMD Realty Investors ((F/K/A CMD Realty Investors, LP), an Illinois General Partnership) which is incorporated herein and made a part hereof was in violation of their fiduciary responsibilities particularly where the Trust related entities under the restructuring would continue to derive a fifty percent interest in the profits of newly created commingled real estate investment funds, the Management Company would continue to manage such funds, the Trust related entities would not be required to invest in any such funds (but would retain the right so to do), the reorganized entity would continue to manage the Trust entities owned real estate portfolio (subject to at least the control of the owners thereof through their right to terminate the Management Agreement (1) for cause, including failure by the Management Company to adhere to industry standards and (2) without cause at any time after the exercise of the "put option" described in Section 9.4 of the Amended and Restated Agreement of General Partnership referred to above. That put option generally provides that the Trust entity retains the right, but not the obligation, to require the partnership to purchase all but not less than all of the Trust entities' interest in the partnership at any time for an amount equal to a full fifty percent of the entity value plus certain additional amounts payable pursuant to the provisions of a Promissory Note marked as Exhibit A and found at tab 4 in a booklet entitled "Revised CMD Reorganization Documents submitted to the Court on June 21, 1994 (clean version)," which shall be deemed incorporated herein and made a part hereof.
Failure on the part of the Objecting Beneficiaries to carry their burden to demonstrate that the foregoing would constitute an inappropriate exercise by the Trustees/Directors either of their discretion or of the Business Judgment Rule leads the Court to conclude that the grounds of attack by the Objecting Beneficiaries here discussed is insufficient to sustain their position in that connection, the Court accepts then the evidence adduced by plaintiffs to the effect that it would be in the best interest of the Trust and of its beneficiaries to enter into the contemplated reorganization in order to obtain the benefits which might be garnered from the creation of future commingled real estate investment funds. Further, the Court accepts the testimony of the Trustees to the effect that the efforts to create new funds in the absence of the contemplated reorganization would or might be futile because of the need to disclose as discussed above.
The Objecting Beneficiaries stressed at hearing that the documents introduced into evidence as representing the reorganization documents were replete with manifest errors. Predicated on those errors, they asserted that the Trustees were without sufficient knowledge or understanding of the proposed reorganization and thus failed to exercise due care in connection with their desire to affect the reorganization. Plaintiffs readily admitted that scriveners errors had occurred in connection with some of the documents (although far fewer than suggested by Objecting Beneficiaries). Plaintiffs were allowed by the Court to provide corrected (and supposedly final copies of the reorganization documents). These documents were provided in the form of two booklets, one of which is the "Revised CMD Reorganization Documents Submitted to Court on June 21, 1994 (clean version) referred to above, and the other of which bore the same title, save only for the parenthetical expression which is (red lined version). The Court finds the Trustees testimony in fact showed a more then general understanding of the reorganization and the Court is satisfied that the Trustees' reliance on counsel with respect to matters of legal language is not inconsistent with the necessary due care required of them here.
A further argument advanced by the Objecting Beneficiaries suggests that the Trustees through the implementation of the reorganization will be ceding or otherwise delegating their fiduciary responsibilities to the Management Group which of course would be contrary to the provisions of the Trust. Suffice it to say, that a review of the reorganization documents as a whole lead this Court to conclude that the Trustees retain control of the Trust assets and will have vested management responsibilities only in the Management Company (the reorganized Management Company) which has produced, so far as appears of record, a substantial profit for the Trust related entities (approximately $35 million) simply from its management activities. Trustees retain control through the "put" referred to above.
This Court has yet to review the Trust accounting pending in this Court (see footnote 1) and the Objecting Beneficiaries herein asked the Court to defer ruling on the matters contemplated by the complaint herein until disposition of that accounting. This Court finds no present reason to honor that request. The Court notes that the "put" referred to above provides substantial protections to the Trustees and to the Trust assets and, accordingly, the Court will permit the Trustees, in their discretion, to go forward with the contemplated reorganization.
Finally, the Court makes the following observations:
(1) Joining the Objecting Beneficiaries in objecting to the reorganization was the Guardian ad litem for a contingent income and remainder beneficiary of the Trust (Isabella). Isabella attacks the reorganization, along with the Objecting Beneficiaries, on the grounds that it is inconsistent with certain provisions of the Trust and, thus, would constitute actions by the Trustees in contravention of the Trust and the Settlors (Grantors) express direction. She argues that a primary intent manifest throughout the Trust is to provide employment to family members. Indeed, she cites to memoranda authored by the Trust's counsel as support for her proposition. Careful review of the Trust language convinces this Court that the language relied on from the Trust itself by Isabella particularly where she quotes from Article II, Section 2, Article II, Section 3 and Article III, Section 1 (see post-trial memorandum of Guardian ad litem for Isabella at 5-6) is precatory and not mandatory language. Indeed, the Settlor couched many of these provisions in terms demonstrating that they were not mandatory but only was in keeping with his desires, but clear permitting the Trustees in their discretion to deviate from those thoughts or expressions of the Settlor. It is significant to note one item that is mandatory and not precatory was the direction found in the first sentence of Article III, Section 1 of the Trust: "I direct the trustees, during the continuance of this Trust, to retain the ownership and voting control of all shares of common stock of F.H. Prince Co., Inc. at anytime included in the trust estate." From all that appears of record, the Trustees acidulously have adhered to that direction. This sentence immediately precedes the substantial authorization from the Settlor to the Trustees quoted in Footnote 4 above, which vests very substantial discretion and powers in the Trustees.
In any event, the Court does not fully concur that it would be consistent with the fiduciary responsibilities of the Trustees to the Trust and to its beneficiaries generally to eschew the potential business opportunity which the Trustees believe will result from the proposed reorganization in order to provide a possible place of employment for a present 5 or 6 year-old beneficiary, who at the time of the natural termination of the Trust will be 19 years of age.
The Court further notes that two of the Objecting Beneficiaries found employment with the Management Company; thereafter left that employment, and when testifying before the Court expressed no desire presently to return to that employment.
(2) To the extent that other issues were raised in connection with the reorganization, the Court believes that those issues, if still cognizable at law, should be left for determination to the pending accounting case; of course, the Court here speaks of the claimed failure of the Trustees to obtain court authority before (a) entering into the commingled fund investment business; (b) awarding profit sharing to senior management and (c) the actual creation of the Management Company.
Based upon all of the foregoing, this Court holds that Trustees consistent with the fiduciary responsibilities and duties to which they are subject under the terms of the Trust and at law may continue the negotiations, execution and consummation of the reorganization which is the subject matter of this action.
Counsel for the prevailing party shall prepare an appropriate judgment consistent herewith to be entered after due notice and an opportunity for hearing.
[1] Wood Prince et al. v. Lynch C.A. 99-5806.
[2] Prince v. Roberts, 436 A.2d 1078 (R.I. 1981); Prince v. Nugent,172 A.2d 743 (R.I. 1961).
[3] Article II, Section 3 of the Trust provides: "Upon the termination of the trust period, the trustees shall pay over . . . in such proportions as the trustees shall, in their absolute discretion, deem best, fifty per cent (50%) of the capital of the trust estate (a) to and among the male children and/or more remote male issue of myself and of my cousin, Bernard Henry-Wood, Jr. who are then serving F.H. Prince Co. Inc. as directors, officers, or employees. . . ."
[4] See e.g., Article III, Section 1: "Subject to this direction, I authorize and empower the trustees, in their discretion: (1) to continue the whole or any part of the trust estate in the form or investments in which the same is received by the trustees without any liability for loss in so doing; and (2) to sell, mortgage, pledge, lease, exchange, partition, invest and reinvest and generally to deal with and dispose of all or any part of the trust estate (otherwise than by gift) as fully as the trustees could do if the trustees were the absolute owners of the trust estate freed from all trusts. . . ."
[5] "In making the foregoing request and suggestions, I do not intend in any way to limit the powers of the trustees and/or the directors of the corporation in selecting and/or properly remunerating suitable persons who will efficiently manage its affairs; and I expressly declare that the trustees, and any of them, may serve as directors and/or officers of any corporation in the capital stock of which the trustee estate is invested, and may receive a reasonable salary therefore in addition to his compensation as trustee."