FRANK W. REDDING *et al. vs.* RHODE ISLAND HOSPITAL TRUST COMPANY *et al.*

JUNE 9, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This bill in equity was brought for the construction of the will and codicil of Robert Potter, late of the city of Newport, deceased, and for instructions to the trustee thereunder, Rhode Island Hospital Trust Company, hereinafter referred to either as the trustee or trust company. The complainants are Frank W. Redding, an annuitant under said will and codicil, his wife, and his two living children. The respondents are the above-mentioned trustee, which was also named, qualified and acted as executor, Virginia Potter, the widow of the testator and an annuitant under said will and codicil, and certain named contingent remaindermen. A guardian *ad litem* was appointed for the minor respondents. Contingent interests and those of persons not in being and not ascertainable are duly represented. The pleadings were properly closed and evidence was taken in the superior court. Being ready for hearing for final decree, the cause was certified to this court for determination under general laws 1938, chapter 545, § 7.

The will was executed in Newport, Rhode Island, on July 20, 1927. The codicil was executed in that same city on December 4, 1928. The testator died February 2, 1930. Administration of the estate was closed February 2, 1935. The present bill of complaint was filed February 4, 1939.

The scheme or plan of the will, which was apparently drawn by a lawyer, is as follows: In paragraph first to fourth of the will the testator provides for the payment of debts and makes specific bequests of his personal, household and

family effects. In paragraph fifth he devises and bequeaths his entire residuary estate to Rhode Island Hospital Trust Company in trust for the purposes specified in subdivisions 1 and 2 thereof. Hereinafter the terms subdivision 1 or subdivision 2 will refer to those subdivisions of paragraph fifth of the will.

In subdivision 1 the testator creates a trust for the benefit of the complainants, Frank W. Redding, his wife and children; in subdivision 2 he creates a trust for the benefit of his wife, the respondent Virginia Potter. These two subdivisions are involved in this cause and will be more fully set forth presently in this opinion. Subdivisions 3 and 4 of paragraph fifth make provisions for contingent remaindermen. Paragraphs sixth, seventh and eighth provide for inheritance taxes, define the powers of the executor and trustee, and appoint the trust company as executor and trustee.

All parties before us agree that the principal question presented for our determination in this cause is the effect that the codicil had on the will, and more particularly the effect that the codicil had on subdivisions 1 and 2.

In these subdivisions the trustee is directed to proceed as follows:

"(1) To set aside out of the principal of the trust estate a sum of money sufficient to produce a net annual income of Twelve Hundred dollars and to hold said sum to set aside, in trust, to manage and invest the same and to collect the income, profits and avails thereof and after the payment thereout of the expenses and charges of administering the said trusts, to pay out of the net income, profits and avails thereof to Frank W. Redding of Zamboanga in the Phillippine Islands, the sum of One Hundred Dollars each and every month during the natural life of the said Frank W. Redding; and upon his death, to continue to pay the said sum monthly to his present wife for and during the term of her natural life or until she remarries, and upon her death or remarriage to continue to pay said sum in equal shares monthly to such of the children of the said Frank W. Redding as may then be living and be under the

age of twenty-three years, and to continue to make such monthly payments as aforesaid until each of said children shall attain the age of twenty-three years; it being the intent and meaning hereof that when any of such children shall attain said age of twenty-three years, or die before attaining said age, the share of said income to which such child shall have theretofore been entitled shall be added to the principal of the trust fund created by this subdivision. And whenever all of the said children shall have attained said age or die before attaining said age, to hold the said principal sum so set aside, as aforesaid, together with any accrued surplus income or other additions thereto, in trust, as a part of the principal of the trust estate hereinafter created for the benefit of my wife and others, to be administered and disposed of in the same manner as is provided in subdivision (2) of this fifth paragraph.

"(2) To hold the remainder of the property devised and bequeathed to it in this fifth paragraph (to which shall be added the principal sum set aside in accordance with the 1st subdivision hereof, together with any accrued surplus income thereof, whenever the trust thereby created shall cease) in trust to hold, manage and invest the same and to collect the income, profits and avails thereof and after the payment of the expenses and charges of administering the said trust estate, to pay the net income, profits and avails thereof in quarterly yearly payments to my wife, Virginia Potter, during the term of her natural life; and upon her death to pay out of the principal of the said trust estate the funeral expenses of my said wife, expenses incident to her last illness, and also the expenses of administering her estate."

The codicil, which was apparently drawn by a layman, probably by the testator himself, reads as follows:

"This codicil to my will dated 20 July 1927 shall precede all stipulations of that will except Sub-division 2 of Fifth paragraph—this codicil being to the effect that a monthly payment of Four Hundred dollars, $400— shall be made my wife Virginia Potter the first day of each month during her lifetime—If the income of the estate is not enough to provide this, drafts shall be made on principal in the form of a loan from Rhode Island

> Hospital Trust Company which shall, from time to time, be paid—as shall be deemed advisable by the Rhode Island Hospital Trust Company, by the sale of securities."

In so far as pertinent to our purposes, it appears in evidence that the executor's appraisal of testator's estate at the time of his death on February 2, 1930 was $100,752.48. The final account of the trust company, as executor, fixes the value of the entire residuary estate at $51,837. On February 2, 1935, the trust company, as executor, delivered such estate to itself, as trustee, and set up that estate as one general trust under the title "Trust of Virginia Potter et al. under the will of Robert Potter." The trust company, as trustee, never set up the special trusts directed by subdivisions 1 and 2.

It further appears in evidence that the trustee paid $400 a month to the widow and $100 a month to Redding from February 1, 1930 to February 1, 1934, although the net income of the entire residuary trust estate, as set up by the trust company on its books, was insufficient to pay those amounts. The deficiency was paid out of principal.

On March 20, 1934, the trustee was advised by counsel that, in the circumstances, it should make no further payments to Redding. Thereafter it stopped making payments to him and, after paying the $400 a month to the widow until September 1935, it then made payments to her at a decreased rate. The present bill is the result of such action by the trust company. We may add at this point that, in the argument before us, the parties did not seriously dispute, if they did not actually concede, that the net income of the entire residuary trust estate, based upon an income rate of 4% on trust investments, would not yield the $4800 per year required to be paid to the widow under the codicil, whether such estate was valued at $100,752.48, as in 1930, or at $51,837, as in 1935.

The principal question in this cause is whether the codicil has modified or affected the trust for the complainants in

subdivision 1. Copious quotations from numerous cited cases and texts appear in the briefs to illustrate the rules of construction that apply in the interpretation of a will, or of a will and codicil. These rules are well established and have been repeatedly stated in our own cases. We find it unnecessary again to state them at length in this opinion. See *Bliven* v. *Borden,* 56 R. I. 283; *Industrial Trust Co.* v. *Clarke,* 59 R. I. 152; *Gould* v. *Trenberth,* 59 R. I. 220; *Pennsylvania Co.* v. *Contributors to Pennsylvania Hospital,* 63 R. I. 466, 9 A. 2d. 269; *Smith* v. *City of Providence,* 63 R. I. 333, 9 A. 2d. 910.

In construing a will, it is fundamental that the will is not to be reconstructed by judicial interpretation. As was said in *Pell* v. *Mercer,* 14 R. I. 412, our duty in construing a will is to "throw our minds back to the time when it was made", and to ascertain from the whole will the testator's paramount intent and to give it effect as far as reasonably possible, without doing violence to established legal principles or the language used by the testator. In other words, the intention of the testator when ascertained is all controlling, and must be deduced from what is actually expressed in the whole will and from implications necessarily following from the language therein employed. When such intention is thus definitely ascertained it is all controlling. Conjecture or speculation is not permitted.

A codicil is an integral part of the will. The will and codicil are to be construed together as one testamentary act, and dispositions in the will are not to be disturbed any more than is necessary to give effect to the intention of the testator as expressed in the codicil. A codicil will vary or modify the will so far, and so far only, as the intention of the testator that it shall do so is made manifest. In construing doubtful language in a codicil, that interpretation will be preferred which gives consistency to the whole will and most effectively carries out the intention of the testator, keeping in mind the circumstances surrounding him when the codicil was executed.

48

To ascertain the testator's intention, his language should be interpreted with reference to the subject-matter relative to which it speaks. Unless words of art are involved, such language is to be given its ordinary meaning, especially if the language is used by a layman. Words will not be rejected as meaningless if, by any reasonable construction, they may be given meaning and made consistent. As between a reasonable construction which requires the rejection of a part of the language of a will or codicil and another which gives meaning to all the language therein used, the latter construction will be adopted.

All the foregoing rules, thus briefly summarized, are pertinent in determining the principal question submitted to us for determination. We deem it advisable to state here that in this cause we are solely concerned with a construction of the will and codicil. Whatever we may hereinafter say in construing the will and codicil is to be taken and understood as expressing no opinion whatever, directly or by way of inference, on any other question or questions that the parties or any one thereof may consider of importance to their particular interests.

The contentions of the parties in brief are as follows: The complainants contend that under the will and codicil the trust company, as trustee, was in duty bound to set up two special trusts as directed in subdivisions 1 and 2; and that the codicil refers to and modifies only the special trust which the testator created for the benefit of his wife in subdivision 2, leaving the special trust which the testator created for complainants' benefit in subdivision 1 unaffected, at least not before the principal of the special trust for the wife had been first exhausted.

The respondents, and more particularly the trust company, contend that the codicil supersedes the provisions of the special trusts created in both subdivisions 1 and 2. Under this view, the respondents argue that it would have been an idle act to set up the two special trusts specified in said subdivisions, and that, from a practical point of view, it was

advisable to treat the entire residuary estate as one trust estate, subject first, to the monthly payments of $400 to the wife from the net income of said single trust estate if the net income thereof was sufficient, otherwise from the principal; and secondly, subject to the payment up to $100 monthly to the complainants out of the net income over and above the $400 payable monthly to the wife.

Our examination of the will and codicil convinces us that the testator did not intend to change the scheme or plan of his will by the codicil. The provisions of the will directing the trustee to set up two special trusts in accordance with subdivisions 1 and 2 were unaffected by the codicil and therefore remain in full force and effect.

Subject to the executor's right to administer the estate according to law, the trustee here, which was also the executor, held the legal title to testator's residuary estate, with the right of possession when the administration of the estate was or reasonably should have been closed by the executor. It then would become its duty to reduce the trust estate to possession and to set up the two special trusts as directed in subdivisions 1 and 2. We are not called upon in this cause to determine when the trustee should have so acted. To this extent we agree with the complainants' contention as above stated.

The respondents' contention in this particular, namely, that in the special circumstances of this cause it was advisable, as a practical matter, to deal with the entire residuary estate as one single trust estate, does violence to the explicit directions of the will in so far as they require the setting up of the two special trusts therein specified. It was not within the province of the trustee to act solely on its own judgment and, in effect, change the plan or scheme of testator's will. The trustee's duty was to carry out such plan or scheme as expressed by the language of the will. If the trustee was in doubt as to whether it should or should not set up the two special trusts under consideration, it could have itself applied for instructions.

The complainants in their brief seek to establish their ultimate conclusion that the codicil does not vary or affect the special trust for the Reddings under subdivision 1, but only modifies the special trust for the testator's wife under subdivision 2. They first attempt to support their contention by limiting the meaning of the opening clause of the codicil, which they characterize as merely of a "prefatory" nature. The clause in question is as follows: "This codicil to my will dated 20 July 1927 shall precede all stipulations of that will except Sub-division 2—of Fifth paragraph".

The complainants first argue that "while the verb 'precede' has only one *basic* definition,—i.e., to be or move before—one finds nothing in the immediate context of Mr. Potter's codicil which with certainty reveals *in what respect or degree or under what circumstances* the codicil shall come ahead of the stipulations of the will. The verb is used variously in common parlance with respect to importance, time, place, rank, priority of payment, preferential treatment, *etc.*" (italics are in the brief and not ours)

In the instant cause we are only concerned with the meaning of the verb "precede" in this codicil. Whatever meaning that verb may have in differing circumstances, the complainants by their own argument admit that such verb is used in common parlance with respect to importance and priority of payment. They further concede that the codicil was written by a layman.

They next argue that the words "all stipulations" in said alleged prefatory clause—"This codicil to my will . . . shall precede all stipulations of that will", cannot be taken in its literal sense, for by doing so these words would be made to precede the dispositions of the first four paragraphs of the will, which provide for the payment of debts and make specific bequests of testator's personal, household and family effects. To this extent we agree with the complainants. The words "all stipulations" must be interpreted with reference to the subject-matter relative to which the codicil speaks.

The next step that complainants take to support their contention is to interpolate by construction the word "trust" before the word "estate" in the following disposition of the codicil. After directing a monthly payment of $400 to testator's wife, the codicil reads: "If the income of *the estate* is not enough to provide this, drafts shall be made on principal . . . ." (italics ours) Having thus interpolated the word "trust" before the word "estate", the complainants then argue that the only trust estate which the testator could have had in mind in this disposition was the special trust estate for his wife which was created by subdivision 2. On the basis of this argument and of their argument with reference to the words "precede all stipulations" heretofore mentioned, they conclude that the codicil could not and did not affect the special trust for the Reddings in subdivision 1; and that the testator by his codicil intended nothing more than "to supplement subdivision 2 by adding to the provision already made for paying the wife the net income from a certain described trust estate the further provision that she should have at least and at all events an allowance of $400.00 per month and that if the income of the said trust estate was not enough to provide this, drafts might be made upon the principal thereof."

We cannot agree with complainants' contention that the codicil does not vary or affect the special trust for their benefit. They assume that the codicil is decidedly ambiguous, and from this assumption they proceed to extract their meaning of the codicil by disregarding or minimizing the import of material language, and by enlarging or restricting the meaning of other isolated terms and words. Complainants' contention consists of a cumulation of inferences resting mainly on conjecture. The conclusion thus reached by them is therefore unnatural and strained. It does not fairly take into consideration the dominant intention and purpose of the testator as expressed by him in ordinary language in the codicil, when that instrument is read as a whole and as an integral part of the will.

52

Our examination of the will and codicil in relation to each other and as component parts of one instrument convinces us that, after the testator had executed his will, he became concerned whether the amount of income from the special trust under subdivision 2 would be sufficient for his wife's maintenance and support after his decease. It is true that he was interested in the Reddings, for whose benefit he had provided a special trust in subdivision 1, but it is clearer by far that he was more deeply solicitous for his wife's comfort and welfare than he was to assist the Reddings. The paramount intention of the testator was to provide a sufficient income for his wife so that she might not be in want or distress at any time after his death. To this end, he provided in his codicil, as we construe it, that the trustee should pay his wife $400 monthly from the net income of his *entire* residuary estate, and should draw upon the principal of that estate to make up such amount, if the net income therefrom should be insufficient. If complainants' contention were to prevail, the primary purpose of testator's will and codicil would be defeated.

There is no principle of construction better established than the principle that the real intention of the testator governs the order in which his gifts are to be paid. In our opinion, the codicil here plainly intended to insure a monthly payment of $400 to testator's wife. It was his clear intention that such payment should "precede all stipulations" of the will that might otherwise have prevented the carrying into effect of that express purpose. There is no subordination of the first four paragraphs of the will, which direct the payment of testator's debts and the distribution of his personal belongings and household effects. The testator was not thinking of these dispositions in his will as the source from which to secure definite maintenance for his wife.

It is clear to us that testator's primary intent, as expressed in the codicil, was to subordinate any payment of income to the Reddings from the special trust under subdivision 1

to the monthly payment of $400 to the wife from the source and in the manner directed. Only if the net income from the entire residuary estate is sufficient, without resort to principal, to make such payment to the wife, are the Reddings entitled to any payment from the surplus net income of such estate in accordance with the provisions of the special trust created for their benefit by subdivision 1.

For the reasons stated, we have reached the following conclusions:

One: The trust company, as trustee, should set up special trusts in accordance with the provisions of subdivisions 1 and 2 of paragraph fifth of the will.

Two: The trust company should have set up said special trusts at least as of February 2, 1935, when the trust company, as executor, turned over to itself, as trustee, testator's residuary estate.

Three: In so doing, the trust company could have used the valuation of the residuary estate on said February 2, 1935.

Four: By the will, as modified by the codicil, it became the duty of the trust company, as trustee, to pay testator's wife, the respondent Virginia Potter, the sum of $400 monthly on the first day of each month during her lifetime before making any payment to the complainants.

Five: The said sum of $400, payable to Virginia Potter, should be taken from the net income of the special trust under subdivision 2, if said net income be sufficient to pay that sum; if the said net income be insufficient, then the entire net income, earned and allocated to the special trust for the Reddings under subdivision 1, or such portion thereof as may be necessary, should be used and applied to make up the said monthly payment of $400 to Virginia Potter; if the combined net income from the special trusts under subdivisions 1 and 2 be still insufficient to provide the $400 payable monthly to Virginia Potter, the trustee should then draw on the principal of the special trust under subdivision 2 to make up the deficiency. If recourse to principal be nec-

essary in order to provide said monthly payment to Virginia Potter, the trustee should first exhaust the principal of said special trust under subdivision 2 before resorting to the principal of the special trust under subdivision 1.

Six: The complainants are entitled to receive the payment provided for them out of the net income of the special trust under subdivision 1, if the net income from the special trust under subdivision 2 be sufficient to make the monthly payment of $400 to Virginia Potter. In case resort must be had by the trustee to the net income of the special trust under subdivision 1 to make up the said payment to Virginia Potter, then whatever balance remains, if any, not to exceed the sum of $100 a month, should be paid to the complainants. It follows from what we have already said that if all the net income from the special trusts under subdivisions 1 and 2 is needed to make up the $400 monthly payment to Virginia Potter, the complainants are entitled to no payment under subdivision 1.

We do not deem it necessary or advisable to consider in this cause certain other questions which the complainants have attempted to raise.

On June 18, 1941, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Baker & Skinner, John W. Baker, J. Whitney MacDonald, Bern Budd* of New York Bar, for complainants.

*Tillinghast, Collins & Tanner, Russell P. Jones,* for trustee and respondent Virginia Potter.

*Harry H. Thurlow,* for respondent John Howard Nott Potter.

*Sidney Clifford,* for National Council of Boy Scouts of America.

*Earle B. Arnold,* guardian *ad litem.*