DECISION
Before this Court is a Petition filed by JPMorgan Chase Bank ("Chase Bank"), seeking instruction as to the proper construction and distribution of two trusts — one testamentary and one inter vivos — established by decedent Charles H. Durfee ("Durfee"). As trustee of both trusts, Chase Bank asks for an order of this Court in aid of the construction of the trusts and for a determination of the proper distribution of the assets thereof.
This Court has jurisdiction pursuant to the Uniform Declaratory Judgments Act, G.L. 1956 § 9-30-4, which provides in relevant part that any trustee
 "may have a declaration of rights or legal relations in respect thereto:
 (1) To ascertain any class of creditors, devisees, legatces, heirs, next of kin, or others;
 (2) To direct the executors administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or
 (3) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."
 FACTS AND TRAVEL I. The Parties
In conjunction with the Amended Verified Petition, the parties have filed with the Court an Agreed Statement of Facts and a Supplemental Stipulated Statement of Facts. In support of their conflicting claims to the Durfee trusts, the interested parties have filed supporting legal memoranda. None has requested an evidentiary hearing.
Durfee died January 20, 1964. He was survived by three children — Amy D. Aldrich, Constance D. St. John, and Carder Hazard Durfee ("Carder"). Of his three children, only Constance D. St. John survives today. Amy D. Aldrich died December 17, 1994, leaving two daughters: Anne H. Aldrich and Jane S. Aldrich. Carder died on October 17, 2003. He had never married and had no biological children. However, on March 7, 2003, seven months before his death and thirty-nine years after his father's death, Carder adopted Charles F. Hickey ("Hickey"), an adult over eighteen years of age. Carder's death triggered the distribution of the two Durfee trusts presently in dispute.
The following parties have asserted an interest in Durfee's trusts: (1) Hickey, the "constant companion" and adopted son of Carder; (2) Constance D. St. John, Durfee's surviving daughter and potential beneficiary of Durfee's estate; and (3) Anne H. and Jane S. Aldrich, potential beneficiaries of Durfee's estate as the surviving daughters of Durfee's daughter, Amy D. Aldrich. Constance D. St. John, Anne H. Aldrich, and Amy D. Aldrich ("Durfee's kin")[1] seek the same construction of the trust instruments and have, therefore, jointly filed their supporting memoranda.
 II. The Trusts
A. The Testamentary (Rhode Island) Trust
Durfee executed his will on October 20, 1960. The will's residuary clause — Paragraph THIRTEENTH — directed that "all the rest, residue and remainder" of his estate be divided into four equal shares. Paragraphs FOURTEENTH and FIFTEENTH of the will devised one such share of the estate to each of Durfee's daughters, Amy D. Aldrich and Constance D. St. John, respectively. As allowed by the Tiverton Probate Court, Paragraph SIXTEENTH of the will established a testamentary trust of the remaining two shares of the estate for the benefit of Durfee's son, Carder. The will directs that the trust corpus be distributed at Carder's death to Carder's "issue then living, per stirpes . . . and in default of such issue, to [his] widow, if then living." The will further provides that if Carder were to die without issue or a surviving spouse the trust assets would be distributed "to [Durfee's] daughters, AMY D. ALDRICH, and CONSTANCE D. ST. JOHN, in equal shares, issue of a deceased child to take the share of his or her parent per stirpes and not per capita." The trust instrument is silent as to the status of adopted children.
B. The Inter Vivos (Massachusetts) Trust
On May 14, 1947, thirteen years before executing his will, Durfee executed an irrevocable agreement of trust, effective under the laws of the Commonwealth of Massachusetts, for the benefit of his wife, his children, and his children's issue. The trust specified that during her life, Durfee's wife, Amy Ward Durfee, would be paid the net income of the trust. When Durfee's wife died in 1959, the original trust was divided, as directed by the trust instrument, into three separate trusts, one each for the benefit of Durfee's three children — Amy D. Aldrich, Constance D. St. John, and Carder. The trust instrument directs that following the death of each of Durfee's children, the corpus of the children's trusts is to be divided "into as many equal shares as there are children of such child then living." Each of these shares is then to remain in trust for each "grandchild of the Grantor" until such grandchild reached a particular age. Those grandchildren who were living at the execution of the trust receive their shares upon reaching age twenty-five. Grandchildren born after May 14, 1947, however, are entitled to take under the will upon reaching age twenty-one. Importantly, the trust instrument does not address the possibility that one or more of Durfee's children could die childless. According to the trust instrument, "all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of [the] Commonwealth [of Massachusetts]."
 ANALYSIS I. Distribution of the Testamentary (Rhode Island) Trust
Durfee's will specifies that the trust it establishes for Carder's benefit will terminate at Carder's death and that the trust corpus, thereafter, will be distributed to Carder's "issue then living, per stirpes . . . and in default of such issue, to [his] widow, if then living." If Carder were to die without issue or a surviving spouse, however, the will directs that the trust assets would be distributed "to [Durfee's] daughters, AMY D. ALDRICH, and CONSTANCE D. ST. JOHN, in equal shares, issue of a deceased child to take the share of his or her parent per stirpes and not per capita." Carder never married, but months before his death and years after his father's death, he adopted his companion, Hickey, who was an adult at the date of adoption.
Hickey argues that, as Carder's adoptee, he qualifies as Carder's "issue" under Rhode Island law and, moreover, that the will evidences Durfee's intent to include adopted children within a limitation to "issue." Hickey claims, therefore, that he is the sole beneficiary of Durfee's testamentary trust. Durfee's kin take the contrary position. They argue that, under Rhode Island law, because Hickey was adopted as an adult and because the adoption took place after Durfee's death, Hickey is specifically excluded from the category of "issue," unless the will provides evidence of contrary intent. Durfee's kin claim that because the will is silent as to the treatment of adoptees adopted as adults after the death of the testator, they — not Hickey — are the sole beneficiaries of the trust. The question before this Court, therefore, is whether a person, adopted in adulthood, may take as the issue of his or her adoptive parent under the trust instrument of a lineal ancestor of the adoptive parent, when that lineal ancestor predeceased the adoption and the instrument makes no reference to the status of such adoptees. Having carefully reviewed the relevant statutory and case law, this Court answers in the negative.
A. Fleet Nat'l Bank v. Hunt
The question before this Court has never been squarely addressed by the Rhode Island Supreme Court. The precise issue, however, was decided recently by the Rhode Island Superior Court, Justice Rubine presiding, in Fleet Nat'l Bank v. Hunt, No. 026899, 2005 R.I. Super. LEXIS 20 (March 9, 2005). In deciding the issue, the court relied on G.L. 1956 § 15-7-16(a), titled "Inheritance by and from adoptive children," which provides:
 "A child lawfully adopted shall be deemed, for the purpose of inheritance by the child and his or her descendants from the parents by adoption and the lineal and collateral kindred of the parents by adoption, and for the purpose of inheritance by the parents by adoption, and the lineal and collateral kindred of the parents by adoption, from the child and his or her descendants, and for all other legal consequences and incidents of the natural relation of parents and children, except as provided in § 15-7-17, the child of the parents by adoption the same as if he or she had been born to them in lawful wedlock. In the construction of any instrument, whether executed before or after May 8, 1956, a child so adopted and the descendants of the child shall be deemed within a limitation to the lawful heirs, issue, children, descendants, or the like, as the case may be, of the parent or parents by adoption, unless a contrary intention shall appear by the terms of the instrument or unless the particular estate so limited has vested in and as to the person or persons entitled to it on April 20, 1962; provided, that this sentence shall not apply in the construction of any instrument as to any child who is over the age of eighteen (18) years at the time of his or her adoption and who is adopted after the death of the maker of the instrument."
(Emphasis added). The court concluded that, by the plain language of § 15-7-16(a), an adoptee "who is over the age of eighteen (18) years at the time of his or her adoption and who is adopted after the death of the maker of the instrument" is not included within a limitation to "children" or "issue." Hunt, 2005 R.I. Super. LEXIS 20, at *4.
Absent from the court's decision is any express reference to testamentary intent. Testamentary intent, where ascertainable, is controlling. Redding v. Rhode Island Hosp. Trust Co.,67 R.I. 41, 47, 20 A.2d 523, 526 (1941). In construing a will, it is the court's duty to "throw [its] mind back to the time when [the will] was made" and to examine the will "to ascertain from the whole will the testator's paramount intent and to give it effect as far as reasonably possible, without doing violence to established legal principles or the language used by the testator." Id. (citations omitted). When the will discloses no evidence of the testator's intent, a court will resort to constructional aids, namely judicial or legislative rules of construction, "not to accomplish the impossible by discovering an undisclosed or secret intention or one that never existed, but in order to reach a judicial determination." Rhode Island Hosp.Trust Co. v. Hooker, 101 R.I. 12, 14, 219 A.2d 772, 774 (1966) (citations omitted).
Section 15-7-16(a) is one such legislative rule of construction. However, that statute cannot be applied in contravention of the testator's intent. See Prince v. Nugent,93 R.I. 149, 157, 172 A.2d 743, 749 (1961) (citations omitted). Thus, the Hunt Court could apply § 15-7-16(a) only if the will provided no evidence of testamentary intent to include within a limitation to "issue" a child adopted as an adult after the death of the testator.
The Hunt Court did not expressly address the testator's intent because, beyond bare words of limitation, i.e. "children" and "issue," the will provided no evidence of intent. In relevant part, the subject trust instrument there provided only that the trust would terminate upon the death of the last survivor of the testator's children and that the trust corpus would then be distributed in fee simple to the "children and issue then living of his two children." Hunt, 2005 R.I. Super. LEXIS 20, at *3. The will did not define "children" or "issue." Id. at *9. Thus, not knowing whether the testator intended to include within a limitation to "issue" a child adopted as an adult after the death of the testator, the court resorted to the legislatively prescribed rule of construction in § 15-7-16(a) "in order to reach a judicial determination." See Hooker, 101 R.I. at 14,219 A.2d at 774.[2]
B. Intent and Durfee's Knowledge of Rhode Island Law at theExecution of the Will
Durfee's testamentary trust, like the testamentary trust inHunt, does not define "issue." Examination of the entire will provides no indication — express or implied — of Durfee's intent to include within a limitation to "issue" a child adopted as an adult after the death of the testator. Hickey asserts, however, that Durfee's unqualified use of the term "issue" is itself, evidence of his intent to include all adoptees within a limitation thereto. This is because, he argues, Durfee is presumed to have known the relevant law of adoption when he executed his will, which, Hickey claims, was that all adoptees were presumed within a limitation to "issue."[3] This Court finds Hickey's argument unpersuasive.
Hickey's argument is grounded in the confusing interplay of Rhode Island statutory and case law regarding the status of adoptees in the construction of an instrument. In Prince,
decided the year after Durfee executed his will, the Rhode Island Supreme Court addressed the issue of "[w]hether a limitation to the children or issue of an adoptive parent set out in a testamentary document includes an adopted child of such parent."93 R.I. at 156, 172 A.2d at 748. The subject testamentary trust had been executed in 1932, at which time it was the policy of the Court that adopted children be presumed excluded from such a limitation "unless an intention to include such child therein appears from the terms of the instrument or surrounding circumstances." Id. at 158-59, 172 A.2d at 749; see alsoRhode Island Hosp. Trust Co. v. Sack, 79 R.I. 493, 495-96,90 A.2d 436, 436 (1952) (quoting Union Trust Co. v. Campi,51 R.I. 76, 81, 151 A. 131, 133 (1930)) ("The word `children' does not usually include an adopted child, notwithstanding a statutory provision investing an adopted child with the right of inheritance from the adopting parent, unless it is manifest from the language of the will and the surrounding circumstances, as in connection with such a statute, that the testator intended to include such child"); but see Hartwell v. Tefft,19 R.I. 644, 35 A. 882 (1896) (holding that an adopted child has the same status as a child born in lawful wedlock) and In re Olney,27 R.I. 495, 63 A. 956 (1906) (same).[4] After reviewing the trust provisions, the Prince Court concluded that the trust instrument did "not make clear the intention of the settlor either to include adopted children within the relevant limitations contained therein or to exclude such children therefrom." 93 R.I. at 161, 172 A.2d at 751. Nevertheless, thePrince Court did not employ the exclusionary judicial rule of construction. Even though the exclusionary judicial rule of construction was the applicable rule at the time that the instrument was executed, the court held that the rule could not be applied in view of the controlling provisions of § 15-7-16(a), as amended by 1956 R.I. Pub. Laws 876. Id. at 161-62, 172 A.2d 751.
When Prince was decided, § 15-7-16(a) was worded differently than it is today.[5] At the time, § 15-7-16(a) read, in relevant part, as follows:
 "In the construction of any instrument whether executed before or after the time of enactment of this act a child so adopted and his descendants shall be deemed to be included within a limitation to the lawful issue or descendants, as the case may be, of the parent or parents by adoption, unless a contrary intention shall appear by the terms thereof or unless the particular estate so limited shall have vested in and as to the person or persons entitled thereto at the time of enactment of this act."
See 1956 R.I. Pub. Laws 876 (emphasis added). Whereas the judicial rule of construction presumed exclusion, the court inPrince read § 15-7-16(a), as amended by 1956 R.I. Pub. Laws 876, to presume inclusion. Faced with a conflict between the judicial and legislative rules of construction, the court deferred to the legislature. The court opined
 "It is incumbent upon us in the present state of the law, unless we are precluded from such action either by the terms of the statute or the clear intent of the settlor, to interpret this deed by applying thereto the rule of construction that has been prescribed by the legislature in § 15-7-16."
Prince, 93 R.I. at 161-62, 172 A.2d at 751.
Because § 15-7-16(a), as it read in 1960, had been in place since 1956, Hickey argues that Durfee is presumed to have known the law of adoption at the execution of the will and, therefore, Durfee is presumed to have intended that all adoptees, including those adopted as adults after his death, be included within a limitation to "issue." This Court disagrees, however, because whether a testamentary limitation to the "issue" of an adoptive parent included an adopted child of such parent had not yet been resolved at the execution of the will in 1960.
Prince, which was the first case to address the issue since the 1956 amendment of § 15-7-16(a), was not decided until 1961. Before Prince, the two most recent cases addressing the issue,Campi, which was decided in 1930, and Sack, which was decided in 1952, had been decided using the exclusionary judicial rule of construction. In both cases, the Rhode Island Supreme Court employed the exclusionary judicial rule of construction despite the fact that in two cases from the turn of the century, not referenced by either the Campi or Sack Courts, the Rhode Island Supreme Court had held that such adoptees were entitled to take as "issue." See Tefft, 19 R.I. at 646, 35 A. at 883;Olney, 27 R.I. at 498, 63 A. at 958. Even though a testator is presumed to know the law with respect to adoption, the presumption of such knowledge is one of fact and the weight to be given to the presumption varies according to the circumstances.See Smith v. Bradford, 51 R.I. 289, 295, 154 A. 272, 275
(1931). This Court finds, therefore, that Durfee cannot have known the relevant law with respect to adoption when he executed his will because the law was unsettled. Because Durfee's knowledge of the law cannot be presumed, it follows that his intent cannot be presumed from his knowledge of the law.
C. Intent and Rhode Island Law Regarding "Issue" Since theExecution of the Will
In the alternative, Hickey contends that, according to Rhode Island case law, Durfee's use of the term, "issue," is prima facie evidence of his intent to include within a limitation thereto adoptees adopted as adults after his death. Indeed, inPrince the court held:
 "Where a settlor includes a gift to the lawful issue of an adoptive parent in a deed of trust, absent from such deed either an express or necessarily implied intent to exclude the adopted child, the use of such language in the limitation by the settlor constitutes prima facie evidence of his intent to include therein the adopted child."
93 R.I. at 166, 172 A.2d at 753. The Prince Court's holding, however, was controlled by the language of the statute, which, at the time, presumed inclusion of all adoptees. Id. Subsequent amendments to the statute have qualified the inclusionary presumption, a fact that is reflected in Rhode Island's subsequent jurisprudence.
In 1966, the Rhode Island Supreme Court decided Hooker, in which the court finally resolved the conflict between the holdings of Tefft and Olney and the holdings of Campi andSack by expressly overruling the two earlier opinions wherein the court presumed that absent contrary manifested intent, an adopted child was considered within a limitation to "issue."Hooker, 101 R.I. at 15, 219 A.2d at 774-75. In Hooker, the court explained that, subsequent to Prince, the legislature had amended § 15-7-16(a) so as to "limit the application of the previously-established constructional preference to those children who are `adopted during the lifetime of the maker of such instrument.'" Id. (quoting § 15-7-16(a), as amended by 1962 R.I. Pub. Laws 640-41) (emphasis added). Previously, the statute had not contained this limitation. In light of the amendment to § 15-7-16(a), the presumption in favor of inclusion was found not to apply to adoptees adopted after the death of the testator despite the testator's use of the term "issue." Lacking evidence of testamentary intent, the court applied its longstanding exclusionary judicial rule of construction. Id. at 16-17, 219 A.2d at 775.
Subsequent to the court's decision in Hooker, the legislature amended § 15-7-16(a) again to read as it now does with the exception that the stated age of majority was twenty-one rather than eighteen. Compare 1966 R.I. Pub. Laws 847-48 with
1970 R.I. Pub. Laws 545-46. This amendment broadened the inclusionary scope of the statute. Whereas the previous version excludes adoptees adopted after the testator's death, the current version of the statute excludes only those adoptees who were adopted asadults after the testator's death. In Goldstein v. Goldstein,104 R.I. 288-89, 243 A.2d 914, 917 (1968) (quoting Prince,93 R.I. at 166, 172 A.2d at 753), the Rhode Island Supreme Court, nevertheless, noted:
 "In [Prince], we recognized that `rules of construction, whether they originate with the judiciary or with the legislature, are to be applied only to acertain [sic] and effectuate the intent of the testator and not to defeat that intent.' We went on to state that, notwithstanding the provisions of [§ 15-7-16(a)], `Inheritance by and from adoptive kindred,' since amended, where a settlor includes a gift to the lawful issue of an adoptive parent in a deed of trust, absent from such deed either an express [sic] or necessarily implied intent to exclude the adopted child, the use of such language in the limitation by the settlor constitutes prima facie evidence of his intent to include therein the adopted child."
The Goldstein Court did not rely on Prince for the proposition that all adoptees are presumed included within a limitation to issue, however. If such were the case, Goldstein
could not be reconciled with Prince and Hooker, and the portion of § 15-7-16(a) pertaining to adoptees adopted as adults after the death of the maker of the instrument would be entirely meaningless. Rather, the Goldstein Court's use of Prince was for the limited purpose of demonstrating the possibility that children adopted by the testator's widow after his death could be included within a limitation to the "children of my wife."[6]
As a result, the court did not need to discuss the limitations imposed on the presumption of inclusion by the recently added exclusionary provision of § 15-7-16(a). This Court finds, however, that in order to resolve the issue in concert with Rhode Island's existing jurisprudence, all adoptees except those adopted as adults after the death of the testator are presumed to be included within a limitation to "children" or "issue," in accordance with the plain language of § 15-7-16(a), as amended by 1970 R.I. Pub. Laws 640-41. A contrary conclusion would be inconsistent with Rhode Island's rules of statutory interpretation and the existing jurisprudence on the application of § 15-7-16(a). See Brennan v. Kirby, 529 A.2d 633, 637
(R.I. 1987) (holding that a statute may not be construed so as to attribute to the legislature an intent that would result in "absurdities" or would defeat the underlying purpose of the enactment or that would "render sentences, clauses or words surplusage"). Therefore, Durfee's use of the term "issue" cannot be prima facie evidence of his intent to include adoptees adopted as adults after his death within a limitation to "issue."
D. Intent and the Design of Durfee's Will
Finally, Hickey argues that "[e]ven a cursory review of Durfee's Will and Testamentary Trust reveals that he intended to extend his bounty to others than those of his own blood and make substantial gifts to charities." (Hickey's Mem. in Supp. of his Cross-mot. for Partial Summ. J. 9.) Hickey's argument is unpersuasive. Because this case is controlled by § 15-7-16(a), as amended by 1970 R.I. Pub. Laws 640-41, the question before this Court is not whether Durfee intended to restrict inclusion within a limitation to "issue" to his blood relations, but whether the trust instrument manifests an intention that adoptees adopted as adults after his death be included within such limitation. Seesupra note 2. The will simply provides no evidence of such intent. In fact, the design of the instrument suggests that Durfee would not have wanted Carder, after his death, to be able to adopt an adult who would qualify as Carder's issue under the trust.
That Durfee put half of his residuary estate in trust for the benefit of Carder is significant because the shares Durfee bequeathed to each of his daughters were granted to them outright under the will. Durfee's daughters, therefore, had complete control of their shares. By contrast, Carder's benefit under the trust was limited to the trust interest during his lifetime. As a result, Carder was afforded minimal control over his share of the trust. Importantly, Durfee did not give Carder a power of appointment over the trust corpus. Rather, he specified that the trust would terminate on Carder's death and, thereafter, be distributed to Carder's surviving spouse or issue. Thus, the design of the trust suggests that Durfee did not want his son to have control over the trust corpus. Hickey's argument that formal adoption recognizes between parents and children a familial bond that transcends physical genesis is unpersuasive because Hickey was Carder's "companion," and he was adopted by Carder not as a youth but as a middle aged man. Based on the design of the trust, it is possible that Durfee would have viewed Hickey's adoption as violative of his testamentary intent because, in effect, it is the exercise of an ungranted power of appointment.
This Court will not base its decision on judicial guesswork, however. This Court is satisfied that Durfee's will provides no evidence of his intention to include within a limitation to "issue" adoptees adopted as adults after his death. This Court, therefore, resorts to the rule of construction prescribed by the legislature in § 15-7-16(a), as amended by 1970 R.I. Pub. Laws 640-41, according to which rule Hickey, who was adopted as an adult long after Durfee's death, is not included within a limitation to Carder's issue. See supra note 2. As a result, by the terms of Paragraph SIXTEENTH (c) of Durfee's will, the trust corpus passes to Durfee's daughters "in equal shares, issue of a deceased child to take the share of his or her parent per stirpes and not per capita." Accordingly, Constance D. St. John takes one half of the trust corpus; one quarter each goes to Anne H. and Jane S. Aldrich.
 II. Distribution of the Inter Vivos Trust
Article IV(3)(c) of Durfee's inter vivos trust directs that upon the death of each of his children or upon the death of his wife "in the case of a present child of the Grantor who predeceased her leaving issue surviving her, the Trustee shall divide the balance of the part held for such child or the issue of such child into as many equal shares as there are children of such child then living, the issue of any deceased child of such child of the Grantor to be counted for a share." The remainder of Article IV(3)(c)(i)-(iv) specify the manner in which "[e]ach share shall thereafter be held" and, ultimately, distributed. The possibility that one or more of Durfee's children could die without a "child" or remote issue is not addressed, however. In other words, if any of Durfee's children were to die without a "child" or remote issue, the trust fails by its terms to dispose of that child's share of the trust.
Hickey and Durfee's kin ("the defendants") agree that Durfee's son, Carder, died without a "child" or remote issue. Even though Carder adopted Hickey, Hickey is not considered Carder's "child" according to the controlling Massachusetts law.[7] The defendants also contend that because Hickey is not Carder's "child," Carder died without a "child" or remote issue and that, as a result, the trust fails by its terms to dispose of Carder's share of the trust. The defendants disagree, however, as to the proper distribution of Carder's share.
Under Massachusetts law, "[w]hen a trust instrument addresses only the transfer of income, and makes no provision for the principal, the disposition of the principal must be determined, if at all possible, from the intent of the settlor." Ventura v.Ventura, 555 N.E.2d 872, 876 (Mass. 1990) (citing Goodwin v.New England Trust Co., 73 N.E.2d 890, 891-92 (Mass. 1947)). Hickey claims that "there is no specific intent which can be gleaned from the 1947 Trust instrument" and, as a result, argues that "as a matter of fundamental fairness the undistributed principal of the failed Trust provision should fall into the residuary of Durfee's estate." (Hickey's Mem. of Law in Supp. of his Cross-mot. for Partial Summ. J. 13.) However, the plain language of Article IV(3)(e) of the trust instrument provides that
 "[i]f it should be determined that any beneficial provision hereunder is invalid for remoteness or for any other reason whatsoever, then the interest[8] subject to such beneficial provisions shall be transferred free of trust to the Grantor's said wife if living; otherwise to his issue by right of representation, and if there be no such issue, to the then next of kin of the Grantor's said wife, not including in any event the Grantor."
Although Article IV(3)(c) is not wholly invalid, insofar as the provision fails to dispose of the trust corpus with respect to Carder's share, this Court finds that Article IV(3)(e) applies. Accordingly, the corpus of Carder's trust passes to Durfee's issue by right of representation: one half of the trust to Constance D. St. John, and one quarter each to Anne H. and Jane S. Aldrich.
Even if Article IV(3)(e) were not applicable, this Court finds that Hickey would not be entitled to Carder's share of the trust corpus. Hickey relies on the Restatement (Second) of Trusts § 411 (1959) for the proposition that this Court should impose a resulting trust on the undistributed principal "in favor of Durfee's residuary legatees under his 1960 Will and Testamentary Trust."[9] (Hickey's Mem. in Supp. of Cross-mot. for Partial Summ. J. 13.)
The language of Article IV(3)(d) and (e) reveals that Durfee specifically did not want a resulting trust created under any circumstances, providing that "in the event of total failure of issue" or "[i]f it should be determined that any beneficial provision [of the trust] is invalid for remoteness or for any other reasons whatsoever," no distribution would be made to "the Grantor or his estate." This Court finds that, in so providing, Durfee "properly manifested an intention that no resulting trust should arise upon the failure of the trust. See Restatement (Second) of Trusts §§ 411, 412 cmt. a ("If property is transferred inter vivos . . . upon a trust which fails, and it is provided in the instrument of conveyance . . . that if the trust should fail the trustee should convey the property to a third person . . . a resulting trust does not arise on the failure of the original trust"); see also Dexter v. President Fellowsof Harvard College, 57 N.E. 371 (Mass. 1900) (if certain provision for preference to kin of settlor proved to be void, income directed to be used for the general purposes of the college); Bowditch v. Attorney General, 134 N.E. 796 (Mass. 1922) (specific gift over to individuals if trust failed).
Furthermore, this Court has already determined that, under Durfee's testamentary trust, Hickey is not considered Carder's issue and is, therefore, excluded from taking as a beneficiary of Durfee's will. Even if this Court were to hold Carder's share of the inter vivos trust on resulting trust in favor of Durfee's estate, Hickey would not be entitled to that share. In accordance with Paragraph SIXTEENTH of Durfee's will, the corpus of Carder's trust would pass to Durfee's daughters "in equal shares, issue of a deceased child to take the share of his or her parent per stirpes and not per capita." Either interpretation, therefore, yields this same result.
 CONCLUSION
Upon careful review of the relevant statutory and case law, this Court declares that Hickey is precluded from taking under both of Durfee's trusts — testamentary and inter vivos. Under Rhode Island law, because Hickey, after reaching the age of majority and after Durfee's — the testator's — death, was adopted by Carder, he is not within a limitation to Carder's issue. Thus, one half of the testamentary trust corpus passes to Constance D. St. John and one quarter each to Anne H. and Jane S. Aldrich. Carder's share of the trust corpus under Durfee's inter vivos trust is similarly distributed in accordance with Durfee's manifested intention that "his issue by right of representation" be the default takers.
Based upon the preceding construction of the two Durfee trusts, counsel for plaintiff shall submit an appropriate order for entry regarding the distribution of said trusts and declaring the rights of the parties.
[1] The word "kin" refers, here, to relatives by blood only.See Black's Law Dictionary 886 (8th ed. 2004).
[2] Section 15-7-16(a) specifically provides for its application "[i]n the construction of any instrument, whether executed before or after May 8, 1956." In the absence of testamentary intent, therefore, a court will apply the rule of construction as it presently reads, not as it read at the execution of the instrument. See, e.g., Prince,93 R.I. at 161-62, 172 A.2d at 751 (applying § 15-7-16(a) as it read at the date of the decision, not at the date of execution); Hooker,101 R.I. at 15, 219 A.2d at 774-75 (same).
[3] Although Hickey does not reference Hunt in support of his argument, Hickey nevertheless impliedly challenges the Hunt
Court's conclusion that the word "issue," by itself, is not prima facie evidence of testamentary intent to include within a limitation thereto adoptees adopted as adults after the death of the testator. See Hunt, 2005 R.I. Super. LEXIS 20, at *4.
[4] In Hooker, decided in 1966, the Rhode Island Supreme Court expressly overruled both Tefft and Olney, stating that the reversal, "in substance, is what the majority did in [Prince] when . . . they said that the long-established rule of construction in this state is `that an adopted child is not to be deemed included within such a limitation unless an intention to include such child therein clearly appears from the terms of the instrument or the surrounding circumstances.'" 101 R.I. at 16-17,219 A.2d at 775 (quoting Prince, 93 R.I. at 158-59,172 A.2d at 749).
[5] Since 1961, § 15-7-16(a) has been amended three times.See 1962 R.I. Pub. Laws 640-41; 1966 R.I. Pub. Laws 847-48; 1970 R.I. Pub. Laws 545-46.
[6] The issue in Goldstein was whether ordering an acceleration of succeeding interests of a class of beneficiaries that included the "children of my wife" would defeat the testator's intent, when the wife had not died but had renounced and terminated her interest. See Goldstein,104 R.I. at 288-89, 243 A.2d at 917. The court held that because the testator specifically referred to the "children of my wife," and not "my children," as he had elsewhere in the trust instrument, the testator intended to delay the vesting of the remainder interests and to prevent acceleration under the given circumstances until the class was closed, foreseeing the possibility that his wife could adopt or have more children after his death. See id.
The actual holding in Goldstein, therefore, is limited to the finding that the testator intended that the class including the "children of my wife" remain open after his death and that the wife could adopt children into that class after his death.
[7] Mass. Gen. Laws ch. 210, § 8 (1896), is the controlling statute. See Billings v. Fowler, 279 N.E.2d 906, 910 (Mass. 1972). In 1947, the word "child" or its equivalent, where the testator was "not himself the adopting parent," was interpreted as excluding an adopted child, "unless it plainly appears to have been the [testator's] intention . . . to include" such an adopted child." Id. Such had been the prevailing rule, essentially unchanged since 1876. Id. Although the rule was completely reversed by St. 1958, c. 121, the change has never been applicable to devises or trusts executed prior to August 26, 1958. See St. 1958, c. 121; St. 1969, c. 27; St. 1975, c. 769. Therefore, since Durfee's inter vivos trust was executed in 1947, ch. 210, § 8, unamended, applies. See Billings,279 N.E.2d at 910 (applying ch. 210, § 8, unamended, because the trust was executed before 1958); Davus v. Hannam, 336 N.E.2d 858, 860-61
(Mass. 1975) (same). Because nothing in the trust instrument indicates an affirmative intention that adopted children be included or excluded as beneficiaries, beyond Durfee's use of the word, "child," Hickey is deemed not to be Carder's "child" for the purposes of Durfee's inter vivos trust.
[8] In the context of Article IV(3)(e), "interest" refers to "beneficial interest," which is defined as "[a] right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing." Black's Law Dictionary
828 (8th ed. 2004).
[9] The Restatement (Second) of Trusts § 411 (1959) provides as follows:
 "Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise or the intended trust fails for illegality."